828 So.2d 160 (2002)
Kevin PETERSON, Plaintiff-Appellant
v.
John TOFFTON, Kelly Ward, Ray Hanson and La. Dept. of Corrections, Defendants-Appellees.
No. 36,372-CA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
Kevin Peterson, Pro Se.
Before CARAWAY, KOSTELKA and DREW, JJ.
CARAWAY, J.
This is an appeal by an inmate from a judgment dismissing his civil action with prejudice, prior to docketing, for failure to state a cause of action and for failure to state a claim upon which relief could be granted. For the reasons set forth below, we affirm the trial court's judgment.

*161 Facts

Kevin Peterson is an inmate at the David Wade Correctional Center ("DWCC") in Claiborne Parish. In January 2002, Peterson filed suit against DWCC Warden Kelly Ward, against DWCC employees John Toffton and Ray Hanson, and against the Louisiana Department of Corrections ("DOC").[1] Peterson sought punitive damages and compensatory damages from the defendants for injuries he allegedly suffered in connection with disciplinary proceedings. Peterson's allegations essentially are that on January 27, 2001, he asked Lt. John Toffton for permission to call the Claiborne Parish Sheriff's Office to report alleged crimes of theft, filing false public records, and malfeasance in office by a DWCC employee. Toffton allegedly denied Peterson's request, telling him in a threatening manner that the requested call was against prison rules and policy and was an unauthorized call. Toffton allegedly told Peterson that he was only allowed to make a call to attorneys on an approved list, but "not to police or other sources." Peterson then asserted to Toffton that Toffton was obstructing justice and Peterson would be compelled to bring charges against him for obstruction of justice. Toffton allegedly became angry and retaliated against Peterson by filing a disciplinary report against him.
Through the disciplinary proceedings, Peterson was found to have violated prison rules and was subjected to penalties of 10 days in isolation and 30-days forfeiture of good time. Peterson's petition to the district court asserts that he exhausted all administrative remedies before filing suit. His petition contains both a copy of his request for an administrative remedy to the warden, Kelly Ward, and a copy of his appeal to the Secretary of the DOC denying Peterson's appeal. His request for an administrative remedy sought to have his good-time credits restored, "expungement," and "monetary awards for the (10) days isolation I served."
The request for an administrative remedy did not assert any physical injuries to Peterson, and did not assert that Toffton made his disciplinary report in retaliation. Likewise, the warden's appeal decision does not indicate that Peterson either complained of any physical injuries or asserted that Toffton was retaliating against him. Instead, the decision simply indicates that Peterson argued his rights had been violated and that he had been denied due process because the disciplinary board had changed the rule number on the disciplinary report. However, the warden, upon reviewing the tape of the hearing, determined that the disciplinary board found that the description in the disciplinary report more appropriately described one rule violation than another, and that Peterson was given a corrected copy of the report, as well as 24 hours in which to prepare his defense. The warden found that Peterson clearly was attempting to have Toffton violate institutional rules and regulations in order to get an unauthorized phone call, and that there was nothing to indicate that Peterson received anything less than a fair and impartial hearing. Because of the seriousness of the offense, the warden concurred in the board's finding of guilt and the sanctions imposed.
Peterson's petition states that after the warden denied his appeal, Peterson appealed to the Secretary of the DOC and his appeal was denied there as well. However, that alleged denial is not contained in the record.
*162 While the trial court's decision in this case acknowledges that Peterson's exhibits to his petition were lacking with respect to an appeal to the Secretary of the DOC, the court noted that Peterson had alleged the appeal was denied, and the court was willing to find that Peterson "appears" to have exhausted his administrative remedies. Nevertheless, the petition did not indicate whether Peterson sought judicial review in the Nineteenth Judicial District Court. Therefore, the trial court could not conclude that Peterson followed the statutory process.
Peterson's petition, for the first time, alleged that he suffered physical injuries from the 10 days in isolation where "he had to live on a concrete slab suffering pain in his back and ribs, suffered migraine and tensions [sic] headaches, emotional distress and mental humiliation." The petition made three separate "legal claims." The first was against Lt. Toffton for allegedly retaliating against Peterson with the disciplinary action. Peterson asserted that his words to Toffton were protected under the First Amendment, that his speech was truthful, and that he was entitled to judgment against Toffton for $25,000 in punitive damages and $25,000 in compensatory damages. His second "legal claim" was against Warden Kelly Ward who allegedly showed a blatant and reckless disregard for Peterson's due process and First Amendment right by denying Peterson's appeal. Peterson sought the same monetary awards from Ward that he sought from Toffton. Peterson's third "legal claim" was against Ray Hanson who allegedly chaired the disciplinary hearing proceedings. Hanson was alleged to have violated and to have shown an arbitrary disregard for Peterson's constitutional rights by conducting an unfair hearing and by punishing Peterson. Peterson requested $50,000 in damages from Hanson.
In February 2002, the trial court issued reasons for judgment and dismissed Peterson's claims with prejudice prior to docketing in the district court. Nevertheless, the court's judgment stated that its dismissal was limited to the action filed in the Second Judicial District Court, and had no effect on any proceedings filed by Peterson pursuant to the DWCC's Administrative Remedies in the Nineteenth Judicial District Court. Peterson then appealed to this court.

Discussion
The Corrections Administrative Remedy Procedure ("CARP") provides certain procedures that offenders must follow when they file administrative complaints. La. R.S. 15:1171 provides the following:
A. The Department of Public Safety and Corrections and each sheriff may adopt an administrative remedy procedure at each of their adult and juvenile institutions, including private prison facilities.
B. The department or sheriff may also adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof, the contractor operating a private prison facility or any of its employees, shareholders, directors, officers, or agents, or a sheriff, his deputies, or employees, which arise while an offender is within the custody or under the supervision of the department, a contractor operating a private prison facility, or a sheriff. Such complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions *163 pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Such administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows. All such procedures, including the adult and juvenile offender disciplinary process, promulgated and effective prior to June 30, 1989, shall be deemed to be the exclusive remedy for complaints and grievances to which they apply insofar as federal law allows.

* * *
La. R.S. 15:1171.
After the administrative procedures are followed, La. R.S. 15:1177 provides that an offender who is aggrieved by an adverse decision in that process can seek judicial review of the decision within 30 days after receipt of the decision only in the Nineteenth Judicial District Court, unless the adverse decision was for a delictual action for injury or damages.
La. R.S. 15:1178 authorizes a "judicial screening" procedure by the trial court as follows:
A. When a clerk of court receives a petition for judicial review filed under the provisions of R.S. 15:1177, the clerk shall transmit the petition to the appropriate division or official of the court prior to taking any action on the petition.
B. The court, as soon as practicable after receiving the petition, shall review the petition to determine if the petition states a cognizable claim or if the petition, on its face, is frivolous or malicious, or fails to state a cause of action, or seeks monetary damages from a defendant who is immune from liability for monetary damages.
C. If the court determines that the petition states a cognizable claim, the court shall return the petition to the clerk of court for service of process.
D. If the court determines that the petition, on its face, is frivolous, or fails to state a cause of action, or seeks monetary damages from a defendant who is immune from liability for monetary damages, the court may dismiss the petition, or any portion of the petition, without requiring the exhaustion of administrative remedies.
Additionally, pursuant to La. R.S. 15:1188, which is a provision of the Prisoner's Litigation Reform Act ("PLRA"), the court may screen the case before docketing to identify "cognizable claims" and may dismiss the petition for the failure "to state a claim upon which relief can be granted" in addition to those remedies listed in La. R.S. 15:1178. The record shows that the district court utilized this procedure which has been previously recognized in other similar actions. Colquitt v. David Wade Correctional Center, et al., 35,273 (La. App.2d Cir.10/31/01), 799 So.2d 1172.
A civil action with respect to prison conditions or a prison suit is expressly defined as "any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." La. R.S. 15:1181. Although plaintiff's petition was styled as a complaint in tort, the nature of a pleading is determined by its substance and not its caption. See La. C.C. P. art. 865; Revere v. Reed, 95-1913 (La.App. 1st Cir.05/10/96), 675 So.2d 292. The nature of the pleadings in this case is similar to the nature of the pleadings in Gibson v. Barnes, 91,0229 (La.App. 1st Cir.4/10/92), 597 So.2d 176. In Gibson, supra, the defendant sought damages in tort against the *164 prison doctor for not authorizing a "light duty" status to limit the defendant's duty. Although the defendant alleged knee pain and mental anguish, the court held that it was "more reasonable to interpret [the defendant's] petition as a complaint that the prison administration failed to honor his request to be released from his work duties," and that the claim was "actually founded on [the defendant's] unhappiness with prison conditions."
In this case, Peterson's complaint arises from a dissatisfaction with the policies and disciplinary procedures of the DWCC. Although Peterson alleges that his injury is like the injury in Pope v. State of Louisiana, 99-2559 (La.6/29/01), 792 So.2d 713, we disagree. The holding in Pope was directed at the application of CARP to traditional tort actions; actions which are not related to conditions of confinement. The injuries suffered by the inmate in Pope had nothing to do with disciplinary or administrative remedy proceedings, but were caused by an accident which occurred while performing demolition work on a separate correctional facility. In contrast, Peterson's alleged "tort" claims arise directly from the disciplinary and administrative remedy proceedings of the DOC and not from an independent accident.
Peterson's complaint, therefore, seeks a remedy with respect to his conditions of confinement. The unconstitutionality of CARP pronounced in Pope deals only with traditional civil matters such as independent torts, which CARP attempted to divest from the original jurisdiction of district courts. Under the rationale of In the Matter of American Waste & Pollution Control, 588 So.2d 367 (La.1991), a case involving injuries to a prisoner from conditions of discipline/confinement is not a traditional "civil matter" under Article V, § 16 of the 1974 Louisiana Constitution. The 19th Judicial District Court in such a case is not exercising "original jurisdiction" in its review of the DOC, but appellate jurisdiction, which, as also addressed in Article V, § 16, may be provided to the district court by the legislature. Loop, Inc. v. Collector of Revenue, 523 So.2d 201 (1987). CARP, which was enacted after the 1974 Louisiana Constitution, like the DEQ legislation at issue in American Waste, is not unconstitutional when applied to injuries from prison confinement. See also Stephanie A. Lottinger, In Re American Waste & Pollution Control Co.: When is an Administrative Appeal Really an Appeal, 1992, 38 Loy. L.Rev. 521.
Peterson's petition and the record reveal that he initially intended to pursue administrative remedies only for issues pertaining to his conditions of confinement and discipline. The provisions of La. R.S. 15:1177(A), therefore, required him to seek judicial review of any adverse administrative remedy decision in the Nineteenth Judicial District Court within 30 days of receipt of the adverse decision. We conclude, therefore, that if Peterson did exhaust his administrative remedies, the proper venue for judicial review of that decision was only in the Nineteenth Judicial District Court. The trial court therefore correctly utilized the judicial screening provisions of CARP and PLRA to dismiss Peterson's claim.

Conclusion
For the foregoing reasons, the judgment of the trial court dismissing the claims of Kevin Peterson is affirmed. Costs are assessed to appellant.
AFFIRMED.
NOTES
[1] The petition is captioned as follows: "Plaintiff's Civil Action Tort Complaint Filed Pursuant [To] The La. State Constitution Art. V § 16(A) And The La. C.C.P. art. 2315."