891 So.2d 1250 (2005)
Patrick R. CHERON
v.
LCS CORRECTIONS SERVICES, INC. and the State of Louisiana Through the Department of Public Safety and Corrections and Warden Gary Copes.
No. 2004-CC-0703.
Supreme Court of Louisiana.
January 19, 2005.
*1251 Charles C. Foti, Jr., Attorney General, Annette Rhodes Seng, Assistant Attorney General, for applicant.
Law Offices of Ferdinand J. Kleppner, Ltd., Ferdinand J. Kleppner, Metairie; Edwards Law Firm, Christopher Alan Edwards, Lafayette, for respondent.
WEIMER, Justice.
Certiorari was granted in this matter to address a split in the circuits as to whether LSA-R.S. 15:1171-1179 as amended by 2002 La. Acts, 1st Extraordinary Session, No. 89, effective April 18, 2002, (Act 89), applies retroactively to a case in which vested rights would be affected.[1] For reasons that follow, we affirm the ruling of the lower courts denying the exceptions of prematurity and vagueness/ambiguity urged by the Department of Public Safety and Corrections (Department). We hold that Act 89 may not be applied retroactively because to do so would divest the claimant of a vested right.

FACTS AND PROCEDURAL BACKGROUND
On July 20, 2001, plaintiff, Patrick R. Cheron, filed a personal injury suit against the Department for injuries he allegedly sustained during the late summer of 2000 while incarcerated at the Pine Prairie Correctional Facility.[2] In the petition, Cheron claims he experienced severe symptoms of fever, blurred vision, vomiting, sore throat and constant headaches, and that he contracted a potentially fatal kidney disease due to inadequate cleanliness and improper food preparation at the facility. He alleged the facility authorities, personnel, and employees ignored his repeated requests for medical attention.
In response to the petition, the Department filed an exception of prematurity asserting plaintiff failed to exhaust administrative remedies required by LSA-R.S. 15:1172 and LSA-R.S. 15:1184. The Department also filed an exception of vagueness or ambiguity based on plaintiff's failure to specify the procedure number assigned to his request for an administrative remedy.
Following trial of the exceptions, the district court rendered judgment denying the exceptions. The Department filed an application for writ of certiorari which the court of appeal denied. In response to the Department's writ application to this court, the matter was remanded for briefing, argument, and opinion. Cheron v. LCS Corrections Services, Inc., 03-1029 (La.6/20/03), 847 So.2d 1246.
*1252 On remand, the court of appeal concluded the trial court correctly denied the Department's exception of prematurity. Based on this court's decision in Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, the appellate court concluded Cheron was not required to comply with the unconstitutional Corrections Administrative Remedy Procedure (CARP) in existence prior to enactment of Act 89 and that retroactive application of Act 89 would unconstitutionally disturb Cheron's vested right. Cheron v. LCS Corrections Services, Inc., 02-1049 (La.App. 1 Cir. 2/23/04), 872 So.2d 1094.
The Department applied for writ of certiorari which this court granted. Cheron v. LCS Corrections Services, Inc., 04-0703 (La.5/14/04), 872 So.2d 532.

DISCUSSION
The narrow issue before this court concerns the validity of the mandatory exhaustion requirement in LSA-R.S. 15:1184 for prisoner suits filed subsequent to this court's decision in Pope, and prior to the 2002 amendment to LSA-R.S. 15:1171, et seq., and LSA-R.S. 15:1184.
The Department argues that at the time Cheron's cause of action arose, LSA-R.S. 15:1184[3] required an inmate to exhaust administrative remedies before filing a tort suit against prison authorities in state court. The record indicates Cheron did not do so. The Department argues this court's decision in Pope did not address LSA-R.S. 15:1184,[4] that it only addressed the constitutionality of the deferential standard of judicial review contained in LSA-R.S. 15:1177.[5] The Department contends that the exhaustion requirement for prisoner tort suits contained in LSA-R.S. 15:1184 is similar to that for medical malpractice claims. Requiring a claimant in a medical malpractice action to go through the medical review panel process prior to filing suit in district court does not divest the district court of original jurisdiction. The Department argues that neither the mandatory exhaustion requirement in LSA-R.S. 15:1184 nor the state's prison grievance system was invalidated by the decision in Pope and that petitioner was required to exhaust administrative remedies prior to filing suit in district court.
Additionally, the Department argues a conflict exists in the circuits. The second circuit, in Poullard v. Hanson, 36,290 (La.App. 2 Cir. 8/14/02), 823 So.2d 1130, writ denied, 02-2730 (La.1/24/03), 836 So.2d 45, applied Act 89 retroactively.[6] In the instant case, the first circuit has ruled that Act 89 cannot be applied retroactively *1253 when to do so would disturb vested rights. The decision of the second circuit did not discuss the effect of retroactive application of Act 89 upon vested rights, but simply granted claimant a ninety day grace period in which to seek an administrative remedy. Thus, the Department argues this court should address the split in the circuits.
Cheron asserts the court of appeal correctly held that Act 89 may not be applied retroactively to his suit as it would divest him of the right to litigate his tort claim. He argues there is no conflict between the circuits because the Poullard case involved a complaint relative to the disciplinary system as opposed to a true tort claim. Cheron maintains the Prison Litigation Reform Act (PLRA) allows the court to screen his petition prior to exhaustion of administrative remedies. LSA-R.S. 15:1188.[7] He argues the trial court apparently concluded his claim was a classic tort claim. Thus, following the Pope holding which declared CARP unconstitutional as it applied to tort claims, he was not required to exhaust administrative remedies. Cheron contends the appellate court correctly reviewed and analyzed the factual situation in light of this court's pronouncement in Pope. The decision protects him from the unconstitutional deprivation of vested rights.
Resolution of this matter requires a determination as to whether the provisions of Act 89 amending CARP and PLRA may be applied retroactively when to do so would deprive a litigant of a vested right.
At the time plaintiff's cause of action arose and on the date suit was filed in district court, LSA-R.S. 15:1172, contained in CARP and entitled "Effect," read as follows:
A. Upon approval of the administrative remedy procedure by a federal court, as authorized and required by 42 USC 1997(C)(2), or as otherwise authorized by law, and the implementation of the procedure within the department or by the sheriff, this procedure shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action they may claim to have against the state of Louisiana, the Department of Public Safety and Corrections, or its employees, the contractor operating a private prison facility or any of its employees, shareholders, directors, or officers, or a sheriff, or his employees or deputies.
B. No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. If the offender has failed timely to pursue administrative remedies through *1254 this procedure, any petition he files shall be dismissed. If at the time the petition is filed the administrative remedy process has not yet been completed, the court shall stay the proceedings for ninety days to allow for completion of the procedure and exhaustion of the remedies thereunder.
C. Any contractor operating a private prison facility shall adhere to all provisions of this Part and the administrative remedy procedures adopted by the department in accordance with this Part.
The corresponding provision in PLRA, LSA-R.S. 15:1184, entitled "Suits by prisoners," was amended by 2001 La. Acts, No. 801, effective June 26, 2001,[8] and provided as follows on the date petitioner's suit was filed:
A. (1) For purposes of this Section, the following words have the following meanings:
(a) "Administrative remedies" means written policies adopted by governmental entities responsible for the operation of prisons which establish an internal procedure for receiving, addressing, and resolving claims by prisoners with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. Such "administrative remedies" need not be adopted or published in compliance with R.S. 15:1171.
(b) "Available" means all administrative remedies adopted by governmental entities, which address claims of the kind asserted by the prisoner even if the administrative remedies do not allow the prisoner the particular kind of relief sought.
(2) No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice. However, the prisoner shall be prohibited from filing any subsequent suits in forma pauperis based on the same claim or claims.
(3) A court shall take judicial notice of administrative remedies adopted by a governmental entity that have been filed with the clerk of the district court in the parish where the governmental entity is domiciled.
B. The court, on its own motion or on the motion of a party, shall dismiss any prisoner suit if the court is satisfied that the action is frivolous, is malicious, fails to state a cause of action, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief can be granted. If the court makes a determination to dismiss the suit based on the content, or lack thereof, of the petition, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies. The court, on its own motion, may raise an exception of improper venue and transfer the suit to a court of proper venue or dismiss the suit.
C. Any defendant may waive the right to reply to any civil action brought by a person confined in any prison or to any prisoner suit. Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the petition *1255 or waive any affirmative defenses available to the defendant. No relief shall be granted to the plaintiff unless an answer has been filed. The court may require any defendant to answer a petition brought under this Section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits.
D. To the extent practicable, in any action brought with respect to prison conditions pursuant to the provisions of this Section, or any other law, by a prisoner confined in any prison, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other communications technology without removing the prisoner from the facility in which he is confined. Subject to agreement by the state or local entity of government with custody over the prisoner, hearings may be conducted at the facility in which the prisoner is confined. To the extent practicable, the court shall allow counsel to participate by telephone, video conference, or other telecommunications technology in any hearing held at the facility.
E. No prisoner suit may assert a claim under state law for mental or emotional injury suffered while in custody without a prior showing of physical injury.
Act 89, effective April 18, 2002, amended both provisions.[9] The pertinent part of LSA-R.S. 15:1172 provides:

*1256 B. (1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.
....

*1257 C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice.
....
E. Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered.
Under LSA-R.S. 15:1184(A)(2) "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice."
Act 89 also revised LSA-R.S. 15:1177 which addresses judicial review of administrative actions. The statute now provides in pertinent part:
A. Any offender who is aggrieved by an adverse decision, excluding decisions relative to delictual actions for injury or damages by the Department ... may, within thirty days after receipt of the decision, seek judicial review of the decision only in the Nineteenth Judicial District Court, ....
C. This Section shall not apply to delictual actions for injury or damages, however styled or captioned. Delictual actions for injury or damages shall be filed separately as original civil actions.
The Department has instituted a two-step system of review to address inmates' formal grievances. If dissatisfied, the inmate pursing a tort claim may file suit in district court. Thus, original jurisdiction of tort claims following Act 89 remains with the district court.
In the instant case, the court of appeal addressed retroactive application of Act 89 which amended the provisions of CARP and certain provisions of PLRA effective April 18, 2002. Because retroactive application would operate to divest Cheron of a vested right to litigate his tort claim, the court concluded the trial court properly denied the Department's exceptions.
Citing Pope, the court of appeal acknowledged the CARP provisions as originally enacted encompassed "complaints and grievances" without reference to torts. A 1989 amendment to Section 1171 expressly included personal injury and medical malpractice within the types of claims encompassed by CARP and added a provision authorizing monetary damage awards. See Pope, 99-2559 at 4-5, 792 So.2d at 716; Cheron, 02-1049 at 5, 872 So.2d at 1098. Operating in conjunction with CARP, PLRA curtails baseless or nuisance suits by prisoners. In Pope the court stated, "The Legislature, of course, is free to enact procedures for initial submission of tort claims by prison inmates to an administrative agency for review, for example, of frivolous claims, as long as the action of the administrative agency does not constitute the exercise of original jurisdiction." Pope, 99-2559 at 12, 792 So.2d at 720; Cheron, 02-1049 at 8, 872 So.2d at 1099.
Citing Segura v. Frank, 93-1271, 93-1401, p. 16 (La.1/14/94), 630 So.2d 714, 725, cert denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the court of appeal acknowledged that if a law is changed during pendency of a suit and retroactive application is permissible, the new law applies even though it may require reversal of a trial court judgment that may have *1258 been correct under the law when rendered. Following enactment of Act 89, the court of appeal noted, several cases had been decided pursuant to the holding in Pope without reference to the act or a determination of whether the provisions should be applied retroactively.[10]Cheron, 02-1049 at 9-10, 872 So.2d at 1100.
The court of appeal then considered whether Cheron should be required to exhaust administrative remedies prior to filing his tort claim in district court. The court found Act 89 establishes "a method of `processing, administering, or determining rights,' and is properly classified as a procedural law. However, even procedural laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights." Lott v. Haley, 370 So.2d 521, 523 (La.1979); Cheron, 02-1049 at 12, 872 So.2d at 1102. Although Cheron filed suit in district court before the one year tort prescriptive period, more than ninety days had lapsed between Cheron's alleged injury and the effective date of Act 89. Retroactive application of the newly created administrative remedy procedure for tort claims found in LSA-R.S. 15:1172(B)(1) (within ninety days from the date injury or damage is sustained) would require abandonment of and dismissal of Cheron's claim.
The appellate court also considered the remedy fashioned by the second circuit in Poullard where the offender was afforded a ninety-day time period following finality of the court's decision in which to pursue administrative remedies. The first circuit correctly chose not to follow that course reasoning that it was inappropriate for the court to jurisprudentially create a grace period where the legislature had not. Cheron, 02-1049 at 14-15, 872 So.2d 1102-1103, citing Maltby v. Gauthier, 506 So.2d 1190 (La.1987).
Although the Legislature could have done so, the enactment of R.S. 9:5628 [which statute is entitled "Actions for medical malpractice"] did not expressly provide either for a delay in the effectiveness of the statute ... or for a grace period for persons with vested claims to assert their rights. Either type of provision arguably would have indicated a legislative intent for the statute to apply to vested causes of action.... [T]he Legislature's failure to provide for either type of period can be construed as an indication that no effect on vested causes of action was intended. When the Legislature, in enacting prescriptive statutes potentially affecting existing causes of action, fails to require parties to exercise vested rights within a reasonable time, the courts should refrain from supplying this legislative lapse. [Footnotes omitted.]
Maltby, 506 So.2d at 1192-1193.
Although the Department appears to support a grace period within which to initiate administrative remedies as allowed by the second circuit in Poullard, the first circuit recognized that such an action was not authorized. The legislature could have provided for such a grace period. It did not. Establishment of a grace period by a court would constitute legislation by the court. Such action is prohibited by the concept of separation of powers. See La. Const. art. 2 §§ 1and 2; La. Const. art. 3 § 1.
*1259 The appellate court also considered and rejected the Department's argument that LSA-R.S. 15:1184 continued to be applicable to the situation at hand. Concluding the former procedure could not be applied without consideration of the judicial review provision that Pope found unconstitutional, the appellate court found the Pope decision "implicitly" held the administrative regulations implementing this unconstitutional legislation were invalid. Cheron, 02-1049 at 16, 872 So.2d at 1103.
The Department correctly argues that Pope did not consider the provision of Section 1184  indeed that section had not been enacted at the time of Pope's injury. Although we disagree with the court of appeal's use of the word "implicitly," we find the court correctly determined the provision of LSA-R.S. 15:1184 mandating exhaustion of such administrative remedies as are available was unenforceable in this factual situation given the relevant dates at issue.
The appellate court found the Department failed to establish an available administrative remedy. The court of appeal held that Act 89 would have prospective application only in this case because retroactive application would deprive Cheron of a vested right. Thus, the court applied the law in effect following the Pope decision and prior to the enactment of Act 89 and found Cheron was not required to exhaust an administrative remedy prior to filing his tort action. Additionally, the court found the exception of vagueness or ambiguity was also without merit.
Review of cases decided following Pope indicates there exists a debate as to how broadly or narrowly the Pope decision should be read.[11] In consideration of the matter before this court, we have carefully reviewed this court's prior decision in Pope and find the decision declared the entire CARP process unconstitutional as it related to tort actions. The Pope decision acknowledged the right of the legislature to establish a procedure whereby the initial submission of a tort claim could be made to an administrative agency. However, such a procedure must not divest the district court of the exercise of original jurisdiction. This court found the administrative procedure in effect at the time Cheron filed suit was unconstitutional as it applied to tort actions.
While we agree that Pope did not declare the entire CARP process unconstitutional, the holding in Pope did declare the entire CARP process unconstitutional as it applied to tort matters.
We find, as did the court of appeal, that the Department did not sustain its burden of establishing the existence of an available administrative remedy at the time Cheron filed suit. The court of appeal correctly concluded that LSA-R.S. 15:1171-1179 as amended by Act 89 could not be applied retroactively to a case in which the claimant would be divested of vested rights.
Thus, at the time Cheron filed suit in district court alleging an action in tort, there was no administrative remedy procedure in place that applied to tort actions; he was not required to utilize an unconstitutional administrative process. The district court decision denying the Department's exceptions and the court of appeal *1260 denial of the Department's writ application were correct.
Although the Department contends this issue affects hundreds of inmate suits pending when Pope was decided and all causes of action arising prior to April 18, 2002, (the effective date of the current law), the record before this court contains no evidence of the number of cases affected. Obviously, there are a finite number of cases to which this opinion will apply. As this court indicated in Pope, it is permissible for the legislature to create an administrative remedy with reference to delictual matters. Indeed, passage of Act 89 provided such a remedy. However, the remedy so established cannot be applied retroactively to deprive a party of a vested right. Further, it is inappropriate to jurisprudentially create a grace period where none is legislatively provided.

CONCLUSION
For the foregoing reasons, the decision of the court of appeal denying the Department's application for writ of certiorari is affirmed.
AFFIRMED
NOTES
[1] Certiorari was also granted in the matter entitled Sharon Dailey v. Helen Travis, in her Capacity as Assistant Warden of Louisiana Correctional Institute for Women, Johnnie Jones in her Capacity as Warden of Louisiana Correctional Institute of Women, State of Louisiana through the Department of Public Safety and Corrections, and ABC Insurance Company, 04-CC-0744, (La.1/19/05), 892 So.2d 17, decided this date in a separate opinion.
[2] Pine Prairie Correctional Facility is a private prison in Evangeline Parish operated by LCS Corrections Services, Inc. Suit against the State of Louisiana alleges negligent oversight of the operation of that facility.
[3] At the time Cheron's cause of action arose, LSA-R.S. 15:1184(A) provided as follows:

No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted.
LSA-R.S. 15:1184 was amended by 2001 La. Acts, No. 801. See footnote 8.
[4] LSA-R.S. 15:1184 was enacted effective July 9, 1997, some three months after Pope was injured and was not at issue in the Pope decision.
[5] LSA-R.S. 15:1177 at the time of the Pope decision provided that an aggrieved offender could, within thirty days after receipt of a decision, seek judicial review in district court.
[6] In Poullard the trial court concluded the Pope decision did not make the entirety of CARP unconstitutional and had no effect on the Prison Litigation Reform Act (PLRA). Thus, the court ruled that Poullard was obligated to proceed with administrative remedies available to him before he could file suit in district court. The second circuit concluded the pertinent changes incorporated in Act 89 were both curative and procedural and could be applied both retroactively and prospectively. The court of appeal affirmed the trial court ruling and granted Poullard ninety days from the date of the opinion to initiate administrative remedies for his delictual action. (We note the incident at the core of Poullard's claim occurred following the decision in Pope and prior to passage of Act 89.)
[7] LSA-R.S. 15:1188 provides:

A. The court shall review, before docketing if feasible or, in any event, before service on the defendants, a petition in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court shall identify cognizable claims or dismiss the petition, or any portion of the petition, if the petition is frivolous, is malicious, fails to state a cause of action, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief can be granted.
B. A court shall not authorize or permit service of a prisoner suit until compliance with both of the following:
(1) The screening required in Subsection A of this Section has been completed.
(2) The provisions of R.S. 15:1186(A)(1) and (2) have been satisfied, if the plaintiff is proceeding in forma pauperis.
C. The clerk shall not have a prisoner suit served until specifically ordered to do so by the court as provided in Subsection B of this Section, and then the suit shall be served only upon those defendants specifically ordered by the court to be served.
[8] 2001 La. Acts, No. 801, § 1 rewrote and expanded subsection A and, in subsection B, added the third sentence authorizing a court to raise an exception of improper venue on its own motion. Prior to the 2001 amendment, subsection A provided:

A. No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted.
[9] Following revision, the statutes provide as follows:

LSA-R.S. 15:1172. Administrative remedies; applicability; initiation
A. Upon adoption of the administrative remedy procedure, in accordance with the Administrative Procedure Act, and the implementation of the procedure within the department or by the sheriff, this procedure shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action they may claim to have against the state of Louisiana, the Department of Public Safety and Corrections, or its employees, the contractor operating a private prison facility or any of its employees, shareholders, directors, or officers, or a sheriff, or his employees or deputies. Any administrative remedy procedure in effect on January 1, 2001, including the procedure published in LAC 22:I.325, is deemed to be in compliance with the provisions of this Section.
B. (1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.
(2) The department is authorized to establish deadlines for an offender to initiate administrative remedies for any nondelictual claims.
(3) The department is authorized to establish deadlines for the procedures and processes contained in the administrative remedy procedure provided in LAC 22:I.325.
C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice.
D. Any contractor operating a private prison facility shall adhere to all provisions of this Part and the administrative remedy procedures adopted by the department in accordance with this Part.
E. Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered.
LSA-R.S. 15:1184. Suits by prisoners
A. (1) For purposes of this Section, the following words have the following meanings:
(a) "Administrative remedies" means written policies adopted by governmental entities responsible for the operation of prisons which establish an internal procedure for receiving, addressing, and resolving claims by prisoners with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. Such "administrative remedies" need not be adopted or published in compliance with R.S. 15:1171.
(b) "Available" means all administrative remedies adopted by governmental entities, which address claims of the kind asserted by the prisoner even if the administrative remedies do not allow the prisoner the particular kind of relief sought.
(2) No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice.
(3) A court shall take judicial notice of administrative remedies adopted by a governmental entity that have been filed with the clerk of the district court in the parish where the governmental entity is domiciled.
B. The court, on its own motion or on the motion of a party, shall dismiss any prisoner suit if the court is satisfied that the action is frivolous, is malicious, fails to state a cause of action, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief can be granted. If the court makes a determination to dismiss the suit based on the content, or lack thereof, of the petition, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies. The court, on its own motion, may raise an exception of improper venue and transfer the suit to a court of proper venue or dismiss the suit.
C. Any defendant may waive the right to reply to any civil action brought by a person confined in any prison or to any prisoner suit. Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the petition or waive any affirmative defenses available to the defendant. No relief shall be granted to the plaintiff unless an answer has been filed. The court may require any defendant to answer a petition brought under this Section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits.
D. To the extent practicable, in any action brought with respect to prison conditions pursuant to the provisions of this Section, or any other law, by a prisoner confined in any prison, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other communications technology without removing the prisoner from the facility in which he is confined. The courts may rule on exceptions and motions, without holding a contradictory hearing, after providing the parties an opportunity to file supporting and opposing memoranda. Subject to agreement by the state or local entity of government with custody over the prisoner, hearings may be conducted at the facility in which the prisoner is confined. To the extent practicable, the court shall allow counsel to participate by telephone, video conference, or other telecommunications technology in any hearing held at the facility.
E. No prisoner suit may assert a claim under state law for mental or emotional injury suffered while in custody without a prior showing of physical injury.
F. The exclusive venue for delictual actions for injury or damages shall be the parish where the prison is situated to which the prisoner was assigned when the cause of action arose. Upon consent of all parties, the court may transfer the suit to a parish in which venue would otherwise be proper.
G. The actions of more than one prisoner may not be cumulated and a prisoner suit filed or prosecuted pro se may not assert a class action. If a suit names more than one plaintiff or asserts a pro se class action, the actions of any plaintiff, other than the first named plaintiff, shall be dismissed without prejudice. As to the claims dismissed pursuant to this Subsection, the filing of the suit shall not be considered an interruption of prescription for purposes of Civil Code Article 3463.
[10] See Spooner v. East Baton Rouge Parish Sheriff Department, 01-2663 (La.App. 1 Cir. 11/8/02), 835 So.2d 709; Creppel v. Dixon Correctional Institute, 01-2068 (La.App. 1 Cir. 6/12/02), 822 So.2d 760, writ denied, 02-2289 (La.11/15/02) 829 So.2d 432; Florida v. Louisiana Department of Public Safety and Corrections, 01-1145 (La.App. 1 Cir. 6/21/02), 822 So.2d 712.
[11] See, Spooner v. East Baton Rouge Parish Sheriff Dept., 01-2663 (La.App. 1 Cir. 11/8/02), 835 So.2d 709; Poullard v. Hanson, 36,290 (La.App. 2 Cir. 8/14/02), 823 So.2d 1130; Creppel v. Dixon Correctional Institute, 01-2068 (La.App 1 Cir. 6/21/02) as clarified on rehearing (7/30/02), 822 So.2d 760, writ denied, 02-2289 (La.11/15/02), 829 So.2d 432; Florida v. Louisiana Dept. of Public Safety and Corrections, 01-1145 (La.App. 1 Cir. 6/21/02), 822 So.2d 712; Ferrington v. Louisiana Department of Corrections, 315 F.3d 529 (5th Cir.2002).