917 So.2d 1284 (2005)
Kevin PETERSON, Plaintiff-Applicant,
v.
Terry GILDON, et al., Defendants-Respondents.
Kevin Peterson, Plaintiff-Applicant
v.
Ray Hanson, et al., Defendants-Respondents.
Nos. 40,328-CW, 40,329-CW.
Court of Appeal of Louisiana, Second Circuit.
December 30, 2005.
*1285 Kevin Peterson, In Proper Person.
Terry Gildon, In Proper Person.
Sgt. Louis Edwards, In Proper Person.
Hon. Charles C. Foti, Jr., Attorney General, Annette Seng, E. David Gilmer, Assistant Attorney Generals, for Warden Kelly P. Ward, Ray Hanson, Warden Venetia Michael.
Before BROWN, C.J., and WILLIAMS, STEWART, GASKINS, CARAWAY, PEATROSS, DREW, MOORE and LOLLEY, JJ., en banc.

*1286 On Remand
BROWN, C.J.
The Louisiana Supreme Court has ordered this court to consider these two writ applications by Kevin Peterson in light of Cheron v. LCS Corrections Services, Inc., 04-0703 (La.1/19/05), 891 So.2d 1250. Each arises out of separate civil actions pending in the Second Judicial District Court, Parish of Claiborne. By order of this court dated September 30, 2005, the matters were consolidated for consideration and decision en banc.
We conclude that applicant, Kevin Peterson, may not proceed in forma pauperis. Peterson is a litigant who has incurred "three strikes" under the provisions of La. R.S. 15:1187 and, thus, is prohibited from pursuing the above-captioned civil matters with the benefit of pauper status. Furthermore, even if Peterson did not have three strikes, a prospective application of Act 89 of 2002 would result in a stay of the proceedings underlying these writ applications.

FACTS
Kevin Peterson is a frequent filer with this court. Since 2002, he has filed over 20 appeals and writ applications in this court, not counting the two addressed herein; he has been denied relief in all but one matter. As a result of some of those filings, he has accumulated "three strikes" that, under the provisions of La. R.S. 15:1187, prevent him from either bringing a civil action in forma pauperis, or appealing a judgment in a civil action or proceeding in forma pauperis. Those provisions state:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding in forma pauperis if the prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in a state court that was dismissed on the grounds that it was frivolous, was malicious, failed to state a cause of action, or failed to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
Peterson is not entitled to the benefit of pauper status because of the "three strikes" he incurred in Peterson v. Austin, 36,365 (La.App.2d Cir.12/11/02), 836 So.2d 235; Peterson v. Toffton, 36,372 (La. App.2d Cir.9/18/02), 828 So.2d 160; and Peterson v. Ward, 36,370 (La.App.2d Cir.8/16/02), 823 So.2d 1146. We now will review the procedural histories in the two matters before us, and we then will address the question of how Peterson's status as an inmate not entitled to proceed in forma pauperis affects the potential applicability of Cheron, supra.

Procedural History of Kevin Peterson v. Terry Gildon and Sgt. Edwards, 40,328-CW
On or about March 28, 2002, Peterson filed a civil action in the 19th Judicial District Court, Parish of East Baton Rouge, alleging the confiscation by prison officials of two books belonging to him, and alleging collusion to deny him an administrative remedy by falsifying prison records concerning the date of the incident. On May 20, 2002, he filed a motion to proceed as a pauper in the 19th Judicial District Court, and on June 13, 2002, the court issued an order allowing Peterson pauper status. Subsequently, the matter was transferred to the Second Judicial District Court, Parish of Claiborne, where the court issued an order granting Peterson the right to proceed as a pauper, but staying the proceedings pursuant to the automatic stay provisions of La. R.S. 15:1186(B)(2)(a) until all accrued court costs were paid. Peterson complained that the application of the automatic stay *1287 to his case is a retroactive application of a procedural law which unconstitutionally operates to deprive him of a vested right.[1]

Procedural History of Peterson v. Ray Hanson, Kelly Ward, and Venetia Michael, 40329-CW
On or about September 1, 2001, Peterson filed suit in the 19th Judicial District Court, asserting that Ray Hanson, a corrections officer at David Wade Correctional Center (DWCC), and Kelly Ward, a warden at DWCC, deprived him of his mattress for approximately 182 days. In addition to asserting that he suffered mental humiliation, emotional distress, depression, and pain, he also sought injunctive relief prohibiting the defendants from depriving him of a mattress as a means of punishment. Peterson later amended his petition to add Venetia Michael, a warden at DWCC, as a defendant.
Pursuant to exceptions of improper venue filed by Ward and Hanson, the 19th Judicial District Court issued an order in February 2003 transferring the matter to the Second Judicial District Court, Parish of Claiborne; the court also denied Peterson's request for a preliminary injunction. Peterson appealed, and in the process filed a motion seeking pauper status; that motion was granted in an order dated June 16, 2003. The First Circuit Court of Appeal affirmed the granting of the exception of improper venue, vacated that portion of the judgment that denied Peterson's application for a preliminary injunction, and remanded the case to the 19th Judicial District Court for transfer to the Second Judicial District Court in Claiborne Parish for further proceedings. Peterson v. Hanson, XXXX-XXXX (La.App. 1st Cir.9/17/04), 897 So.2d 32.
When the record in the case was received by the Second Judicial District Court, the trial court issued an order granting Peterson leave of court to proceed in forma pauperis, but the court stayed the proceedings as required by La. R.S. 15:1186(B)(1)(b) pending the payment by Peterson of the accrued court costs. Peterson then filed a motion to reconsider the imposition of the stay, as well as a motion to lift the stay, arguing that applying the automatic stay provisions, not enacted until 2002, to his suit filed in 2001 was an unconstitutional deprivation of a vested property right. The trial court denied Peterson's motions, but declined to revoke his pauper status because his suit had been filed before our order announcing the loss of Peterson's pauper status for incurring three strikes.
Peterson sought supervisory review of the denial of his motion for reconsideration, but that application was rejected for noncompliance with URCA Rule 4-3; he subsequently filed another writ application that was denied on the showing made. In May 2005, the Louisiana Supreme Court issued an order identical to the one issued in 40,328-CW ordering this court to consider Peterson's writ application in light of the decision in Cheron, supra.

DISCUSSION
Act 89 of 2002 substantially amended the provisions of La. R.S. 15:1171, et seq., in order to cure constitutional problems identified in Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713. In Pope, the Supreme Court held that certain provisions of the Louisiana Corrections Administrative Remedy Procedure *1288 (CARP) were unconstitutional to the extent that they divested the district courts of original jurisdiction over tort actions filed by inmates against the Department of Public Safety and Corrections and its employees. The unlawful provisions essentially allowed the Department of Public Safety and Corrections to adjudicate its own delictual liability in tort actions, and required the district courts to give manifest error deference to such adjudications.
One of the procedural changes effected by Act 89 was to require that an offender initiate administrative remedies for delictual actions within 90 days of the date of injury or damage; otherwise, his delictual claim would be abandoned. La. R.S. 15:1172. In Cheron, supra, more than 90 days had elapsed from the date of the inmate's injury to the effective date of Act 89. Accordingly, if the new procedural provisions were applied there would have been no available administrative remedy for Cheron to exhaust. Because procedural laws are not accorded retroactive effect where such an application would operate to disturb vested rights, the Supreme Court concluded that applying Act 89's 90-day limit for initiating administrative remedies would be unconstitutional in that case.
Act 89 also amended La. R.S. 15:1186 which sets forth a procedure through which a prisoner applies for and is granted pauper status when bringing a civil action. This procedure includes the automatic stay to which Peterson objects. Logically, in light of the holding in Cheron, supra, a question arises concerning the constitutionality of applying the automatic stay to a prisoner who already has been granted pauper status prior to the effective date of Act 89. However, for the reasons set forth below, we conclude that Peterson's three strikes disqualify him from being allowed to proceed as a pauper, thereby obviating the need to consider the constitutional question in the matters at bar. Furthermore, we conclude that even if Peterson did not have three strikes, application of the automatic stay to Peterson's actions still would be proper because under the facts recited above, the application would be prospective only vis-a-vis his pauper status.
Initially, we observe that the "three strikes" provisions of La. R.S. 15:1187 became effective on July 9, 1997, well in advance of the actions brought by Peterson. As previously noted, Peterson accumulated three strikes before the end of calendar year 2002, and those strikes prohibit him from further pursuing civil actions with the benefit of pauper status. The "three strikes" provisions are designed to be applied prospectively from the finality of the dismissals giving rise to the strikes. This is plainly shown by the provisions of La. R.S. 15:1186(F) which, like those of Section 1187, have been in effect since July 9, 1997. The provisions of Subsection (F) state:
If a prisoner has at least three dismissals as described in R.S. 15:1187 but the prisoner does not yet have three dismissals that are final under that Section, and, further, if the prisoner is disqualified from proceeding as a pauper either in federal court by operation of 28 USC 1915(g) or in the courts of another state by operation of a similar law of that state, then the court on its own motion may, or on the motion of a party shall, stay all proceedings in any other prisoner suit or appeal in which the prisoner is proceeding as a pauper until such time as the dismissals become final. This Subsection shall not apply if the court finds that the prisoner is in imminent danger of serious physical injury.
The above-quoted provisions show that as soon as a prisoner has at least three dismissals as described in R.S. 15:1187, *1289 and also is disqualified from proceeding as a pauper in federal court or in the courts of another state by operation of a similar law, then all proceedings in any other prisoner suit or appeal in which the prisoner is proceeding as a pauper are immediately stayed until such time as the three dismissals become final. Obviously, when the dismissals become final, as in the instant case, these provisions intend for the prisoner to be unable to proceed as a pauper in other prisoner suits or appeals, including those already filed in which the prisoner is proceeding as a pauper. Thus, while the provisions of Subsection (F) primarily address staying proceedings in limited circumstances, they also show that the finality of the three dismissals ("three strikes") has the effect of prospectively preventing a prisoner from proceeding as a pauper in all proceedings in any other prisoner suit or appeal in which the prisoner is proceeding as a pauper. Accordingly, because Peterson has "three strikes" that have become final, he cannot proceed as a pauper in either of the instant matters; this prohibition became effective prospectively from the finality of the third strike and is not a retrospective application.
Finally, we note that Act 89 became effective on April 18, 2002. However, Peterson did not file his motion to proceed in forma pauperis in the matter that is the subject of 40,328-CW until May 20, 2002. Plainly, the automatic stay provision was a part of our law before Peterson filed his pauper motion, and application of the law to that motion is prospective only. Likewise, in the matter that is the subject of 40,329-CW, Peterson's motion to proceed as a pauper was not filed until June 2003, well after the effective date of Act 89; accordingly, no retrospective application of the automatic stay provision has occurred in that matter either. Because pauper status can change over time, a court's decision on whether to grant such status must be made based upon the prisoner's financial situation at the time the pauper request is filed.

CONCLUSION
For the reasons set forth above, Peterson is hereby denied pauper status in both matters on remand.
NOTES
[1] Although Peterson apparently never sought review of that order by this court, the Louisiana Supreme Court issued an order for us to consider Peterson's writ application in light of Cheron, supra. After receiving the Supreme Court's order, we reviewed Peterson's writ application filed with the Supreme Court.