# Supreme Court of Louisiana

The Opinions handed down on the **27th day of June, 2025** are as follows:

**BY Cole, J.:**

2024-C-00957    *GERALD WILLIAMS VS. LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS (Parish of East Baton Rouge)*

AFFIRMED. SEE OPINION.

Weimer, C.J., concurs in the result and assigns reasons.
Hughes, J., dissents for the reasons assigned by Justice Griffin.
Griffin, J., dissents and assigns reasons.
Guidry, J., dissents for the reasons assigned by Justice Griffin.

SUPREME COURT OF LOUISIANA

No. 2024-C-00957

GERALD WILLIAMS

VS.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

On Writ of Certiorari to the Court of Appeal, First Circuit,
Parish of East Baton Rouge

**COLE, J.**

Gerald Williams, an inmate in the custody of the Louisiana Department of Public Safety and Corrections, filed suit in district court for judicial review of a decision of the Louisiana Board of Pardons and Parole ("Parole Board") that revoked his parole. Based upon the recommendation of a Commissioner, the district court dismissed Williams' suit with prejudice for failure to state a claim for which relief could be granted and also because it was perempted under La. R.S. 15:574.11(D). The court of appeal affirmed. For the following reasons, we affirm.

## BACKGROUND

In 1985, Williams was convicted of armed robbery and sentenced to 99 years imprisonment without benefit of parole, probation, or suspension of sentence. *See generally State v. Williams*, 482 So. 2d 1090 (La. App. 3d Cir. 1986). In affirming Williams' conviction and sentence, the Third Circuit observed:

> The trial court makes mention that defendant's criminal conduct threatened serious harm; the defendant has a prior history of criminal activity and such conduct was likely to recur; [and that] the defendant was not likely to respond to probation . . . .
>
> Neither is the sentence excessive in relation to the offender and the offense . . . .
>
> This was the defendant's third felony conviction. The defendant was convicted of aggravated assault in 1979 and two counts of simple burglary in 1980. While on probation, he absconded to California where he committed an armed robbery in 1982. After serving approximately three years in prison in California, he was paroled and returned to Red

River Parish, Louisiana, where only a few days later he committed the instant armed robbery.

During the course of this crime, the defendant was armed with a loaded pistol and stated to his victim, "I wish you would scream so I could shoot you".

*Id.* at 1092-92.

In 2013, after serving 28 years in prison, Williams was released on parole with conditions that included "refrain[ing] from engaging in criminal conduct." *See* La. R.S. 15:574.4.2(A)(1). Under the terms of his parole, any violation resulting in revocation would require Williams to "serve the remainder of the sentence as of the date of release on parole." La. R.S. 15:574.4.2(A)(6).

On March 25, 2021, Williams was arrested and charged with aggravated assault, a felony. At his arraignment the following day, the court read Williams his legal rights, including his right to counsel. He waived those rights and pleaded guilty to one count of simple assault, a misdemeanor.[1] The committee on parole then detained Williams for violating his parole conditions and informed him of those charges in writing.

On April 30, 2021, Williams acknowledged committing aggravated assault on March 25, 2021. In that same document—initialed, signed, and dated by Williams—he waived both his preliminary hearing and final parole revocation hearing and acknowledged:

I admit that I am in violation of the conditions of my parole in the manner outlined by my Parole Officer in the Notice of Preliminary Hearing. In signing this waiver, I fully understand that I waive my rights and privileges to a final parole violation hearing before the Board of Parole, and that the Board, in all probability, will REVOKE my parole pursuant to La. R.S. 15:574.9(A).

On May 5, 2021, the Parole Board notified Williams in writing that it was in receipt of his waiver of the final revocation hearing, it accepted his admission to

---

[1] The minute entry for the arraignment provides: "The defendant appeared in proper person. The Court advised [him] of [his] legal rights including the right to counsel and court appointed attorney. The defendant waived those rights…[and] entered a plea of guilty…"

2

violating the conditions of his parole, and his parole was revoked, effective April 30, 2021.

In September 2022, Williams, acting *pro se*, filed a petition for judicial review challenging the revocation of his parole. In his petition, Williams asserted that his waivers were not knowing and voluntary. He believed pleading guilty to simple assault, a misdemeanor, as opposed to the crime for which he was arrested and charged, aggravated assault, should have constituted a "technical violation" of parole warranting only a 90-day sentence under La. R.S. 15:574.9(H).

The Parole Board moved to dismiss, asserting the petition failed to state a valid claim for which relief could be granted. The Parole Board noted the revocation record demonstrated that Williams expressly waived his right, in writing, to a preliminary and final revocation hearing, and that he pleaded guilty to violating parole. The Parole Board further argued that the claim was perempted under the 90-day peremptive period set forth in La. R.S. 15:574.11(D).

The matter was referred to a commissioner for review.[2] The commissioner issued a recommendation that Williams' petition for review be dismissed, with prejudice, for failure to state a claim for which relief could be granted and for being perempted under La. R.S. 15:574.11(D). Williams, again acting *pro se*, opposed the commissioner's recommendation. Adopting the commissioner's recommendation, the district court granted the Parole Board's motion and dismissed Williams' petition with prejudice. The First Circuit affirmed. *Williams v. La. Department of Public Safety & Corrections*, 23-1235 (La. App. 1 Cir. 6/27/24), 2024 WL 3198974 (unpublished). This Court thereafter granted Williams' writ application. 2024-0957 (La. 2/5/25), 400 So. 3d 103.

---

[2] The offices of commissioner of the Nineteenth Judicial District Court were created to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. La. R.S. 13:711, 13:713(A). The district judge "may accept, reject, or modify in whole or in part the findings or recommendations made by the commissioner and also may receive further evidence or recommit the matter to the commissioner with instructions." La. R.S. 13:713(C)(5).

DISCUSSION

We first address the threshold issue of whether Williams' petition for judicial review is perempted. Next, we examine Williams' claim that his procedural due process rights were violated when the Parole Board revoked his parole without holding a revocation hearing, despite his express waiver. Finally, we address whether Williams' parole violation could have been classified as a "technical violation" even if timely filed.

**Peremption**

Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the discretion of the committee on parole. La. R.S. 15:574.11(A). The statute sets forth the procedure by which a parolee may seek review of the revocation of his parole and provides, in pertinent part:

> A. . . . . **No prisoner or parolee shall have a right to appeal from a decision of the committee regarding** release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or **the revocation** or reconsideration of revocation **of parole, except for the denial of a revocation hearing under R.S. 15:574.9** . . . .
>
> . . . .
>
> D. Petitions for review that allege a denial of a revocation hearing under the provisions of R.S. 15:574.9 **shall be subject to a peremptive period of ninety days** after the date of revocation by the committee on parole . . . . Petitions for review filed after this peremptive period shall be dismissed with prejudice . . . .

La. R.S. 15:574.11(A), (D) (emphasis added).

Louisiana Revised Statute 15:574.11 grants appellate jurisdiction to the Nineteenth Judicial District Court to review decisions of the Parole Board where a denial of a revocation hearing under La. R.S. 15:574.9 is alleged or the procedural due process protections for such a hearing were violated. There is no other basis for an appeal. La. R.S. 15:574.11(A).

4

In the limited circumstances where an appeal is allowed, the appeal must be taken within 90 days. La. R.S. 15:574.11(D). The plain language of La. R.S. 15:574.11(D) provides that the time period is peremptive. Peremption is a period of time fixed by law for the existence of a right and unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. Peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461. A peremptive period statute extinguishes the previously existing right with the result that, upon expiration of the peremptive period, a cause of action or substantive right no longer exists to be enforced. *Bunge Corp. v. GATX Corp.*, 89-1645 (La. 3/12/90), 557 So.2d 1376.

Williams did not file his petition for judicial review until September 24, 2022, 507 days after the Parole Board rendered its decision to revoke his parole on May 5, 2021—well after the 90 days within which he was allowed by law to seek judicial review. Thus, any right Williams had to appeal was extinguished by his failure to file a petition within the 90 days allotted in La. R.S. 15:574.11(D).

**Procedural Due Process and Waiver**

Even if Williams had petitioned for review within the 90-day peremptive period, his procedural due process claim would fail. The State and parolees each have significant interests in parole and revocation thereof. "In many cases, the parolee faces lengthy incarceration if his parole is revoked…[and thus] the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The State's interests are several:

> The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty. Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new

5

adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

*Id.* at 483.

Balancing the competing interests of parolees and the State, the Supreme Court in *Morrissey* held that for most parole revocation cases, due process requires a two-tiered hearing scheme, comprising a preliminary revocation hearing and a final revocation hearing. *Id.* at 484-85. The preliminary hearing is designed "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485. The final hearing provides the alleged violator an "opportunity to be heard and to show, if he can that he did not violate the [parole] conditions" and, assuming a violation is found, a determination of whether "circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488.

Importantly, *Morrissey* provides that a parolee can waive his revocation hearing. *Id.* at 487; *See also* La. R.S. 15:574.9(A) ("…[T]he committee shall hold a hearing to determine whether his parole should be revoked, unless said hearing is expressly waived in writing by the parolee. A waiver shall constitute an admission of the findings…and result in immediate revocation."). To avoid the consequences of his express waiver, Williams contends that his waiver was not "knowing, intelligent, and voluntary" because waiving his hearings meant serving the remainder of his original sentence. We disagree.

The record demonstrates Williams' waiver was valid. As detailed above, Williams expressly waived both hearings in a written document he signed, dated, and initialed. In that same document, Williams confirmed that he understood the charges against him and that he was not being treated for mental illness. Williams pleaded guilty in the criminal proceedings, and he admitted to committing the parole

violation in the administrative proceedings.[3] At no point did Williams claim he had not committed the offense, contest the underlying charges, or request counsel despite numerous offers. The record reflects Williams was fully informed of the rights available and voluntarily decided to waive them in a clear and unambiguous writing. *See, e.g., State v. Smith*, 418 So. 2d 515 (La. 1982).[4] As discussed below, there were also two express statutory bars to the relief sought by Williams.

**"Technical Violation"**

Finally, Williams argues the Parole Board should have considered his crime a "technical violation" of parole under La. R.S. 15:574.9(H), and that he was entitled to serve only the first-time technical violator sentence before being released back on parole. This argument fails under a plain reading of the statute.

As of the May 5, 2021 revocation decision,[5] La. R.S. 15:574.9(H) provided that technical violation provisions "shall not apply" to "[a]ny offender released on parole for the conviction of a crime of violence as defined in R.S. 14:2(B)." La. R.S. 15:574.9(H)(1)(d)(i). Williams was convicted in 1985 for armed robbery, defined as "…the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while

---

[3] Parole is an administrative process; a revocation hearing is not a trial on a new criminal charge, but an extension of the sentencing procedure from the underlying conviction. Law of Probation & Parole § 26:1.

[4] Notably, even if Williams had not waived his hearings, or if his waiver were deemed invalid, his claim would still fail. Procedural due process did not require a preliminary revocation hearing here. *See Moody v. Daggett*, 429 U.S. 78, n.7 (1976) ("[W]here petitioner has already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires."). Neither would revoking Williams' parole without a final revocation hearing have violated due process. *Morrissey*, 408 U.S. at 490; See also *Moody*, 429 U.S. at 89 ("[I]n cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is [mitigation].").

[5] La. R.S. 15:574.9(H) was amended by Acts 2024, No. 8, § 2, effective April 29, 2024, narrowing which parole violations could be considered "technical violations" and increasing the sentence for first-time technical violators from 15 to 90 days. Although this amendment does not affect the outcome of this case, we nevertheless apply the law in effect at the time Williams' cause of action arose—*i.e.* the date Williams' parole was revoked. La. C.C. art. 6 and R.S. 1:2. *See also Cheron v. LCS Corr. Servs., Inc.*, 2004-0703 (La. 1/19/05), 891 So. 2d 1250 (statutory amendments requiring inmate to exhaust administrative remedies prior to bringing personal injury action could not be applied retroactively to deprive inmate of vested rights).

armed with a dangerous weapon." La. R.S. 14:64(A). Armed robbery is an enumerated "crime of violence." La. R.S. 14:2(B)(21). For this reason alone, Williams could never have qualified as a technical violator of his parole.

Although Williams ultimately pleaded guilty to the misdemeanor of simple assault, defined as "an assault without a dangerous weapon", La. R.S. 14:38(A), rather than the aggravated assault for which he was arrested, simple assault is still "an intentional misdemeanor directly affecting the person." Therefore, Williams pleaded guilty to an offense that is also excluded from being considered a "technical violation" because it is "an intentional misdemeanor directly affecting the person." La. R.S. 15:574.9(H)(2)(b). For this reason, too, Williams was ineligible for technical violation sentencing.

## CONCLUSION

For the reasons set forth above, the judgment of the appellate court, which affirmed the district court's dismissal of Williams' petition for judicial review with prejudice, is affirmed.

**AFFIRMED**

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00957

## GERALD WILLIAMS

## VS.

## LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

*On Writ of Certiorari to the Court of Appeal, First Circuit,*
*Parish of East Baton Rouge*

**WEIMER, C.J.**, concurring in the result.

The regulations addressing a defendant's right to counsel during parole revocation proceedings appear somewhat contradictory. According to La. R.S. 15:179, "[t]he Department of Public Safety and Corrections shall provide legal representation for each indigent parolee who is charged with violating the conditions of his parole with respect to which he has the right to a parole revocation or prerevocation hearing, if the indigent parolee is entitled by law to representation by counsel and if the parolee requests such representation." While qualified and somewhat cryptic, this provision suggests that defendants are entitled to counsel from the moment they are charged with a parole violation.

In apparent contradiction, La. R.S. 15:574.9 provides that a defendant facing parole revocation "shall be permitted to consult with and be advised and represented by his own legal counsel or legal counsel appointed under the provisions of R.S. 15:179" only if the defendant does not waive a revocation hearing. This qualification appears problematic for defendants, since presumably whether to waive a revocation hearing is one of the primary reasons a person facing parole revocation would need an attorney's advice.

1

Defendant, unrepresented, entered a plea of guilty to a single count–simple assault, a misdemeanor. The Commissioner adopted the Department of Correction's assertion that defendant had waived "his final parole revocation hearing and entered a guilty plea to violating the conditions of his parole" by committing "the misdemeanor offense of simple assault with a weapon." Under the law, there is no such crime. "Simple assault is an assault committed without a dangerous weapon." La. R.S. 14:38.

Defendant's case illustrates the difficulty of navigating the intricate and involved labyrinthine network of contradictory regulations[1] governing parole revocation and making an informed decision regarding hearing waiver without the assistance of counsel.[2] The regulations governing when a defendant is entitled to an

_____

[1] See **Marquis v. F.D.I.C.**, 965 F.2d 1148, 1151 (1st Cir. 1992) (indicating that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989's "text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses—a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising—it is inevitable.").

[2] This is particularly true here, in that the parole officers presented defendant with numerous forms that misleadingly appear to refer to his technical violation, suggesting he would be eligible for parole reinstatement after 90 days.

For example, an "Activity Report" issued by defendant's parole officer and her supervisor noted that defendant had waived his preliminary hearing, pled guilty to violating "parole condition 4" and "parole condition 10," and waived his final revocation hearing. The form recommends revoking defendant "because of Technical Violation(s). DF-6 and 6C attached."

According to the attached form, "formerly DF-6C," defendant's parole condition 4 prohibited defendant from engaging in criminal activity. The form notes that "[o]n 03/25/2021, you committed the offense of Aggravated Assault." Parole condition 10 required defendant to pay supervision fees. The form notes that defendant "failed to pay supervision fees in a timely manner and are currently in arrears $1495.00." The report recommended revocation of defendant's parole, with the justification that defendant had committed a simple assault while on parole for a violent offense. The report added that defendant pled guilty to a misdemeanor, "but he used a weapon during the altercation."

Defendant attaches a printout of his Department of Corrections master record, which is also potentially misleading. A notation on the record reads "REV-PAR-WAIV TECHNICAL ON 04/30/21." While inscrutable, the notation appears to suggest a waiver and a technical parole revocation. Another page of the printout states that defendant's violation is type "318—REV OF SUPV/WAIV TECH/RECOMM—P."

attorney are impossibly complicated for a defendant, as well as an astute attorney, to understand. The system needs to be fair, just, rational, and logical. If not, society loses faith in the law. Clearly, the law governing a criminal defendant's right to an attorney is in need of clarification by the legislature.

Nonetheless, based on the facts of this case, the result reached is justified. However, in other cases, such a result may not be justified.

# SUPREME COURT OF LOUISIANA

## No. 2024-C-00957

## GERALD WILLIAMS

## VS.

## LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

*On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of
East Baton Rouge*

**GRIFFIN, J., dissents and assigns reasons.**

Gerald Williams' parole has been revoked. He faces seventy years in prison. He pled guilty and waived all rights to parole revocation hearings – both without counsel. The forms he was given reflect he faced only technical violations, which would not require full revocation. There remains a discrepancy as to whether he committed aggravated assault or simple assault. The statutes involved in this matter are contradictory on their face.[1]  The Due Process Clause, La. Const. art. I §2, protects fundamental fairness and prohibits government conduct that is irrational or that shocks the conscience. *State v. Karey*, 16-0377, p. 4 (La. 6/29/17), 232 So. 3d 1186, 1189, *State v. Bazile*, 12-2243, pp. 12-13 (La. 5/7/13), 144 So. 3d 719, 730, *Cf. State v. Perry*, 610 So. 2d 746, 757 (La. 1992), Lee Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*, 35 LA. L. REV. 1, 4-5 (1974), and *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (recognizing liberty interest in parole). I would therefore find it fundamentally unfair, conscience shocking, and irrational to revoke Mr. Williams' parole. Holding hair cutting shears during a verbal dispute has condemned a man to die in prison at great expense to the citizens of this state. I respectfully dissent.

---

[1] Under La. R.S. 15:574.9, a defendant is not entitled to counsel prior to waiver of parole revocation rights and incorporates La. R.S. 15:179. Yet, La. R.S. 15:179 provides a right to counsel at all stages.

1