872 So.2d 1094 (2004)
Patrick R. CHERON
v.
LCS CORRECTIONS SERVICES, INC. and The State of Louisiana Through the Department of Public Safety and Corrections and Warden Gary Copes.
No. 2002 CW 1049 R2.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
Writ Granted May 14, 2004.
*1096 Ferdinand J. Kleppner, Metairie, Counsel for Plaintiff/Respondent Patrick R. Cheron.
Christopher A. Edwards, Lafayette, Counsel for Defendant LCS Corrections Services, Inc.
Annette R. Seng, Wendell Woods, Baton Rouge, Counsel for Defendant/Relator State of Louisiana, Department of Public Safety and Corrections.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
KUHN, J.
This writ application filed by defendant-relator, the State of Louisiana, through the Department of Public Safety and Corrections ("the Department"), is before us on remand from the Louisiana Supreme Court. In determining whether the trial court properly denied the Department's exceptions, we address whether pertinent provisions of the Louisiana Corrections Administrative Remedy Procedure ("CARP"), as amended by Acts 2002, 1st Extraordinary Session, No. 89 ("Act 89"), are retroactive. Because we find that retroactive application of Act 89 would operate to divest respondent, Patrick R. Cheron, of a vested right, i.e., the right to litigate his tort claim, we conclude the trial court properly denied the Department's exceptions, and we deny the Department's writ application.

I. FACTUAL AND PROCEDURAL HISTORY
On July 20, 2001, Cheron filed a personal injury suit against the Department for injuries he allegedly sustained during the late summer of 2000, during his incarceration at the Pine Prairie Correctional Facility ("the Facility").[1] Cheron alleges that while incarcerated, he experienced severe symptoms of fever, blurred vision, vomiting, sore throat, and constant headaches. He contends that he contracted a potentially fatal kidney disease known as "F.S.G.S.," which was allegedly caused by inadequate cleanliness and improper food preparation utilized by the Facility. He maintains that Facility authorities, personnel, and employees ignored his repeated requests for medical attention. He asserts that if they had timely responded to his requests for medical attention, his illness could have been arrested or cured. He claims that the Department's negligence has caused severe physical pain and emotional damage and has substantially reduced his life expectancy.
Responding to the petition, the Department filed a dilatory exception raising the objection of prematurity, asserting that Cheron failed to exhaust administrative remedies as required by Louisiana Revised Statutes 15:1172 and 15:1184. The Department also later filed another dilatory exception, which raised the objection of *1097 vagueness or ambiguity, urging that the petition failed to specify the applicable procedure number assigned to Cheron's request for an administrative remedy. After trial of the exceptions, the trial court signed a judgment denying both exceptions on April 15, 2002.
Thereafter, the Department filed a writ application. On March 10, 2003, this court addressed the merits of the application and denied the writ. The Department then filed a writ application with the supreme court that was granted.[2] The supreme court later remanded the matter to this court for "briefing, argument and opinion." Cheron v. LCS Corrections Services, Inc., XXXX-XXXX (La.6/20/03), 847 So.2d 1246.
In its brief, the Department urges that the district court erred in finding that Pope v. State, 1999-2559 (La.6/29/01), 792 So.2d 713, eliminated the mandatory-exhaustion requirement of Louisiana Revised Statutes 15:1184. The Department posits that even under the language of the Pope decision, an inmate must continue to exhaust administrative remedies pursuant to Louisiana Revised Statutes 15:1184 prior to filing a tort suit against prison authorities. The basis for the Department's claim is that Pope did not address a challenge to Louisiana Revised Statutes 15:1184 and did not declare it unconstitutional as applied to inmate tort claims. In making these arguments, the Department does not address the applicability of Act 89, recent legislation addressing a variety of matters pertinent to prisoner litigation. The Department merely states that Cheron's cause of action arose prior to its April 18, 2002 effective date.

II. ANALYSIS
The provisions of CARP, Louisiana Revised Statutes 15:1171-1179, were enacted in 1985 in response to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j (1980), which provided standards for the voluntary development and implementation by states of a system for resolution of disputes and grievances raised by prisoners. Pope v. State, 1999-2559, p. 4, 792 So.2d at 715. Pursuant to the provisions of CARP, the Department adopted an administrative remedy procedure for receiving, hearing, and disposing of any and all complaints and grievances by offenders against the state, the department, or its employees that arise while an offender is within the custody or under the supervision of the department. La. R.S. 15:1171(B). As originally enacted, no state court could entertain an offender's grievance or complaint that fell under the purview of the administrative remedy procedure unless and until the offender had exhausted the remedies provided by the procedure. La. R.S. 15:1172(B). The purpose of requiring exhaustion of administrative remedies is to reduce the quantity and improve the quality of prisoner suits. See Porter v. Nussle, 534 U.S. 516, 524-525 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) (addressing the federal Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("FPLRA")). Also, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Another benefit is that the internal review process may filter out frivolous claims. Porter v. Nussle, 534 U.S. at 525, 122 S.Ct. at 988. Operating in conjunction with CARP, the *1098 Louisiana Prison Litigation Reform Act ("LPLRA") curtails baseless or nuisance suits by prisoners.[3]
As originally enacted, Section 1171 of the CARP provisions encompassed "complaints and grievances" without any reference to tort actions. Pope v. State, 1999-2559, pp. 4-5, 792 So.2d at 716. However, in 1989, the Legislature amended Section 1171 to expressly include personal injury and medical malpractice within the type of claims encompassed by CARP and to add a provision authorizing monetary damage awards. Pope v. State, 1999-2559, p. 5, 792 So.2d at 716. The procedures authorized by Louisiana Revised Statutes R.S. 15:1171(B) and 15:1172(A) constituted the administrative remedies available to offenders for the purpose of preserving any cause of action claimed against the state, the department, or its employees. Prior to its amendment by Act 89, Section 1172(B) further provided in pertinent part:
No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. If the offender has failed timely to pursue administrative remedies through this procedure, any petition he files shall be dismissed.
Pursuant to Section 1177 A (before its amendment by Act 89), an offender who was aggrieved by a decision in favor of the Department in an administrative remedy procedure was entitled to seek judicial review in the Nineteenth Judicial District Court within thirty days of receipt of the decision. The review was confined to the record made during the administrative remedy proceeding, although the court could order that additional evidence be taken. Section 1177(A)(5). The review was further limited to "the issues presented in the petition for review and the administrative remedy request filed at the agency level." Id. Section 1177 further provided that the court may reverse or modify the decision only for the limited reasons enumerated in the statute, including arbitrary or capricious behavior, abuse of discretion and manifest error. Section 1177(A)(8).
In Pope v. State, our supreme court addressed whether CARP (prior to its amendment by Act 89), violated La. Const. art. V, § 16(A), which vests the district courts with original jurisdiction over "all civil and criminal matters." Michael W. Pope, a former inmate, brought a personal injury action against the Department in district court, alleging he was seriously injured while incarcerated. Pope, who had not first presented his claim to the warden via CARP, claimed the procedure was unconstitutional as applied to his personal injury action because it divested the district courts of original jurisdiction over a tort action. After the tort action was dismissed *1099 with prejudice by the court of appeal, the supreme court granted certiorari to consider Pope's claim.
Recognizing tort actions as being clearly civil matters, the court found that the CARP legislation violated the Constitution by allowing the Department to exercise original jurisdiction in tort actions and was "an invalid attempt to alter the original jurisdiction of the district courts by legislative act." Pope v. State, 1999-2559, p. 11, 792 So.2d at 719. Although the court broadly held that the statutory provisions of CARP were unconstitutional "to the extent that the statutes are applied to tort actions," the court explained that the existence of the administrative remedy procedure was not by itself prohibited by the constitution:
[T]he problem with La.Rev.Stat. 15:1171-1179 is not that the statutes completely eliminate the district courts... from taking part in any manner in a certain category of civil cases ... or that the statutes add an administrative remedy procedure as a prerequisite to the district court's exercise of original jurisdiction (as in medical malpractice actions); the problem is that the statutes divest the district courts of the original jurisdiction granted by the Constitution in all civil matters and vest original jurisdiction in certain tort actions in the [Department] officials who administer the administrative remedy procedure.
Pope v. State, 1999-2559, pp. 8-9, 792 So.2d at 718 (Emphasis added).
Thus, the court explained that CARP's unconstitutionality resulted from the manner in which the district court was limited to performing a deferential judicial review of the administrative decision rather than independently deciding the tort action. The Pope court concluded, "[T]he Legislature cannot by legislative act, divest the district courts of the original jurisdiction fixed by the Constitution in those civil matters, such as tort actions, in which the Constitution does not otherwise provide for original jurisdiction in other tribunals." Pope v. State, 1999-2559, p. 12, 792 So.2d at 720 (Footnote omitted). Nevertheless, the Pope court acknowledged that the legislature could enact procedures requiring administrative review of inmates' tort claims. The court stated, "The Legislature, of course, is free to enact procedures for initial submission of tort claims by prison inmates to an administrative agency for review, for example, of frivolous claims, as long as the action of the administrative agency does not constitute the exercise of original jurisdiction." Id.
Pursuant to Act 89, effective April 18, 2002, the legislature promptly amended Louisiana Revised Statutes 15:1172 and 15:1177 to cure the constitutionality problems identified in the Pope decision. As amended, Louisiana Revised Statutes 15:1172 now provides in pertinent part:
B. (1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.[4]

*1100 * * *
C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice.
* * *
E. Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered. Act 89 also revised Louisiana Revised Statutes 15:1177 (addressing judicial
review of administrative actions), which now provides, in pertinent part:
A. Any offender who is aggrieved by an adverse decision, excluding decisions relative to delictual actions for injury or damages, by the [Department]... may, within thirty days after receipt of the decisions, seek judicial review of the decision ....
* * *
C. This Section shall not apply to delictual actions for injury or damages, however styled or captioned. Delictual actions for injury or damages shall be filed separately as original civil actions....
(Emphasis added.)[5]
Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies even though it requires reversal of a trial court judgment that may have been correct under the law in effect when it was rendered. Segura v. Frank, 93-1271, 93-1401, p. 16 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994).
Since Act 89 was enacted, this court has applied the Pope holding that an inmate was entitled to have a district court adjudicate his tort claim under its original jurisdiction without first exhausting administrative remedies available under CARP, without referencing Act 89 or determining whether it had retroactive effect. See Creppel v. Dixon Correctional Institute, 2001-2068 (La.App. 1st Cir.6/21/02), 822 So.2d 760, writ denied, 2002-2289 (La.11/15/02), 829 So.2d 432; Florida v. La. Dep't of Public Safety and Corrections, XXXX-XXXX (La.App. 1st Cir.6/21/02), 822 So.2d 712. Additionally, in Spooner v. East Baton Rouge Parish Sheriff Dep't, 2001-2663, pp. 6-7 (La.App. 1st Cir.11/8/02), 835 So.2d 709, 712-713, this court reversed the dismissal of an inmate's tort suit based on failure to exhaust administrative remedies without addressing whether the provisions of Act 89 (particularly the amended provisions of Louisiana Revised Statutes 15:1172 B requiring an offender to initiate his administrative *1101 remedies for a delictual action within 90 days) should be applied retroactively. Because the provisions of Act 89 would require Cheron and other offenders to exhaust available administrative remedies prior to litigating a tort claim in district court, we must determine whether the Act has retroactive effect and can be applied to Cheron's suit, although his claim arose prior to the effective date of Act 89.
Louisiana Civil Code Article 6 entitled, "Retroactivity of laws," provides, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Although Louisiana Revised Statutes 1:2 does not distinguish between substantive, procedural and interpretative laws in its directive that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated," this statute has been limited to apply only to substantive legislation. Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX, p. 6 n. 6 (La.4/3/01), 783 So.2d 1251, 1257 n. 6.
Article 6 requires a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature expressed its intent, our inquiry is ended. If not, we must classify the enactment as substantive, procedural or interpretive. Morial v. Smith & Wesson Corp., XXXX-XXXX, p. 9 (La.4/3/01), 785 So.2d 1, 10, cert denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001).
Because the legislature made no clear expression regarding its intent concerning the retroactive or prospective application of Act 89, we must classify the law as substantive, procedural, or interpretive.[6] Substantive laws are laws that impose new duties, obligations, or responsibilities upon parties, or laws that establish new rules, rights, and duties or change existing ones. Interpretative laws are those that clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Jacobs v. City of Bunkie, 1998-2510, p. 8 (La.5/18/99), 737 So.2d 14, 20. Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. King v. State ex rel. Louisiana Dept. of Public Safety and Corrections, 1998-2910, p. 4 (La.App. 1st Cir.2/18/00), 754 So.2d 1119, 1122. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Jacobs v. City of Bunkie, 1998-2510, p. 8, 737 So.2d at 20. Remedial statutes include those that are designed to correct an existing law. See Blacks Law Dictionary 1296 (7th ed.1999). "The legislature may cure by subsequent act an irregularity of nonobservance of requirements which it originally might have dispensed with, provided that vested rights have not intervened." Barnett v. State Mineral Board, 193 La. 1055, 1068, 192 So. 701, 705 (1939), (citing Sanger v. Bridgeport, 124 Conn. 183, 198 A. 746 (1938)).
*1102 Act 89 has rectified the unconstitutionality of the previous CARP procedure by providing that an offender's tort suit is subject to the district court's original jurisdiction. As such, the district court determines the action de novo rather than being limited by the standard of review set forth in Louisiana Revised Statutes 15:1177. Both prior to and after the enactment of Act 89, Louisiana Revised Statutes 15:1184 A provided, "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted."[7] Considering the provisions of Act 89 in conjunction with Section 1184 A(2), we find that Act 89 establishes a method of "processing, administering, or determining rights," and is properly classified as a procedural law. However, even procedural laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights. Lott v. Haley, 370 So.2d 521, 523 (La.1979).
"Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." Austin v. Abney Mills, Inc., XXXX-XXXX, p. 11 (La.9/4/02), 824 So.2d 1137, 1145 (quoting Walls v. American Optical Corporation, XXXX-XXXX, p. 8 (La.9/8/99), 740 So.2d 1262, 1269). Thus, "statutes enacted after the acquisition of such a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties." Cole v. Celotex, 599 So.2d 1058, 1063 (La.1992) (quoting Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1985). See also Martinez v. State of California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that a state tort claim is a species of property protected by the due process clause). Under Louisiana law, a cause of action accrues when a party has the right to sue. Falgout v. Dealers Truck Equipment Co., XXXX-XXXX, p. 12 (La.10/19/99), 748 So.2d 399, 407.
As amended by Act 89, Louisiana Revised Statutes 15:1172 B requires an offender to initiate administrative remedies for a delictual action for injury or damages within ninety days from the date the injury or damage was sustained. If he fails to timely initiate or pursue his administrative remedies, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. La. R.S. 15:1172 C. Upon the effective date of Act 89, more than ninety days had lapsed since Cheron had allegedly sustained his injury. During that period of time, Cheron did not initiate any administrative remedy procedures. Thus, retroactive application of Section 1172 B and C would result in the abandonment of and the dismissal of Cheron's claim. As such, Act 89 affects Cheron's vested substantive rights.
In Poullard v. Hanson, 36,290, p. 9 (La. App.2d Cir.8/14/02), 823 So.2d 1130, 1135, writ denied, 2002-2730 (La.1/24/03), 836 So.2d 45, the second circuit applied Act 89 retroactively without addressing the concept of vested rights. The Poullard court merely afforded the offender a 90-day time period within which to pursue his administrative remedies. We have also considered this approach of supplying a 90-day time period within which Cheron would have the opportunity to comply with the amended provisions of La. R.S 15:1172. We have determined, however, that where *1103 the legislature has failed to prescribe a time period for application of the statute to those with existing causes of action, the judiciary has no basis for supplying such a time period. See Maltby v. Gauthier, 506 So.2d 1190, 1193 (La.1987) (wherein the court instructed, "[w]hen the Legislature, in enacting prescriptive statutes potentially affecting existing causes of action, fails to require parties to exercise vested rights within a reasonable time, the courts should refrain from supplying this legislative lapse.")
Thus, since we have determined that the retroactive application of Act 89 would operate to disturb vested rights in this case, we conclude Act 89 has prospective application only with respect to this case. Accordingly, we address the merits of the exceptions under the applicable law prior to the enactment of Act 89.[8]
An exception raising the objection of prematurity pursuant to La. C.C.P. art. 926 A(1) raises the issue of whether the judicial cause of action has not yet come into existence because some prerequisite condition has not been fulfilled. Ginn v. Woman's Hosp. Foundation, Inc., XXXX-XXXX, p. 3 (La.App. 1st Cir.9/22/00), 770 So.2d 428, 430-431, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 647. The objection contemplates that the plaintiff has filed his action prior to some procedure or assigned time, and it is usually utilized in cases wherein the applicable law or contract has provided a procedure for one aggrieved of a decision to seek administrative relief before resorting to judicial action. Girouard v. State Through Dep't of Educ., 96-1076, p. 4 (La.App. 1st Cir.5/9/97), 694 So.2d 1153, 1155. Generally, the person aggrieved by an action must exhaust all such administrative remedies or specified procedures before he is entitled to judicial review. Id., XXXX-XXXX at p. 5, 694 So.2d at 1155.
The party that raises the objection of prematurity has the burden of showing that an administrative remedy is available, by reason of which the judicial action is premature. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., 1999-2241, p. 6 (La.App. 1st Cir.3/7/01), 798 So.2d 143, 147, writ denied, XXXX-XXXX (La.1/4/02), 805 So.2d 1188. Once the existence of an administrative remedy is established, the burden shifts to the plaintiff to show that the specified administrative remedies or procedures have been exhausted or that the present situation is one of the exceptional situations where the plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate. Ginn v. Woman's Hosp. Foundation, Inc., XXXX-XXXX, p. 3, 770 So.2d at 431.
The Department urges that Louisiana Revised Statutes 15:1184 required Cheron to exhaust administrative remedies before filing his tort suit in state court, and that the district court erred in finding that Pope eliminated this mandatory exhaustion requirement. Section 1184 A(2) provides in pertinent part, "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." (Emphasis added.) Although the Pope decision did not specifically address Section 1184, the Pope decision held that CARP's statutory provisions as applied to offenders' tort actions violates our state constitution. As such, we find that the Pope court implicitly held that the administrative regulations that implemented this unconstitutional legislation are invalid. See Dailey v. Travis, 2002-2051 (La.App. 1st Cir.2/23/04), 872 So.2d 1104, 2004 WL 324727 (rendered this *1104 date, wherein we concluded that the former regulatory procedure cannot be applied without encountering the judicial review provision that the Pope court found to be unconstitutional). Because the Department has not established available administrative remedies other than those established pursuant to CARP, the Department has not sustained its burden of establishing an available administrative remedy. The trial court did not err in denying the Department's exception raising the objection of prematurity.
Additionally, we find no merit in the Department's exception raising the objection of vagueness or ambiguity. In support of this exception, the Department urges only that the petition failed to specify the applicable procedure number assigned to Cheron's request for an administrative remedy. Since we conclude that Cheron was not required to exhaust any administrative remedies prior to filing his tort action, we find no basis for sustaining this exception.

III. CONCLUSION
Retroactive application of Act 89 to Cheron's tort action would unconstitutionally disturb his vested rights. Based on the Pope decision, Cheron is not required to comply with the unconstitutional CARP procedure that existed prior to Act 89. Thus, we find that his tort action was not filed prematurely. Additionally, Cheron's petition was not vague or ambiguous because it did not provide an administrative procedure number. Accordingly, we find that the trial court properly denied the Department's exceptions.
WRIT DENIED.
GUIDRY, J., concurs in the result.
NOTES
[1] Cheron also named Warden Gary Copes and LCS Corrections Services, Inc. as defendants.
[2] Prior to addressing the merits of the writ application, this court had denied the application on July 1, 2002, because it appeared to be untimely. Thereafter, the Department filed a writ application with the supreme court that was granted. The Supreme Court remanded the matter to this court "to rule on the merits of the application." Cheron v. LSC Correctional Services, Inc., 2002-2146 (La.11/8/02), 828 So.2d 1117.
[3] The LPLRA, enacted in 1997, requires a district court to dismiss any prisoner suit that is frivolous, malicious, fails to state a cause of action, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief can be granted. La. R.S. 15:1184 B. Further, Louisiana Revised Statutes 15:1184 A(2) provides "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." "Prisoner suit" is defined as "any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison.... La. R.S. 15:1181. (Emphasis added.) A broad interpretation of this statutory language is supported by the analysis set forth in Porter v. Nussle, 534 U.S. at 524-525, 122 S.Ct. at 988 (addressing the FPRLA, which is parallel to the LPLRA). Cheron's tort action seeks recovery of damages for injuries that allegedly resulted from the effects of actions by government officials, and is subject to the provisions of the LPLRA.
[4] Pursuant to Louisiana Revised Statutes 15:1172 B(2) and (3), the department is authorized to establish deadlines for the procedures and processes contained in the administrative remedy procedure provided in LAC 22:I.325. Pursuant thereto, the Department has promulgated an administrative remedy procedure that utilizes a two-step system of review to address inmates' formal grievances in lieu of the three-step system that was previously used. LAC 22:I.325G. If an inmate is not satisfied with the Second Step response, he may file suit in district court. LAC 22:I.325G(2)(b). Upon filing that suit, the inmate must furnish the administrative remedy procedure number on the court forms. The provisions of LAC 22:I.325 apply to administrative procedure requests filed on or after its effective date, April 20, 2002. Also effective September 20, 2002, the Department revised the adult administrative remedy procedure to provide that the offender has 90 days from the date of an alleged event within which to initiate his administrative remedy.
[5] Act 89 additionally added subsection F to Louisiana Revised Statutes 15:1184, which provides:

The exclusive venue for delictual actions for injury or damages shall be the parish where the prison is situated to which the prisoner is assigned when the cause of action arose. Upon consent of all parties, the court may transfer the suit to a parish in which venue would otherwise be proper.
[6] Louisiana Revised Statutes 15:1172 B(2) and (3) authorizes the Department to establish deadlines for the procedures and processes contained in the administrative remedy procedure provided in LAC 22:I.325. It can be argued that the legislature intended prospective application since they apparently envisioned that new regulations would have to be implemented to rectify the problems outlined in Pope. However, because the Department previously had authority to promulgate regulations to implement administrative remedy procedures prior to the enactment of Act 89, and since it is not clear what the legislature contemplated regarding existing causes of action, we consider the appropriate classification of Act 89.
[7] Following amendment by Acts 2001, No. 801, § 1, this mandate appears in Louisiana Revised Statutes 15:1184 A(2). During the time period between the Pope decision and Act 89's enactment, the Pope decision made clear that the then-existing administrative remedy procedure violated our state constitution.
[8] Neither party challenges that the Pope decision is to be given retroactive effect. Generally, unless a decision specifies otherwise, it is to be given prospective and retroactive effect. Succession of Clivens, 426 So.2d 585, 594 (La.1982).