# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-617

**HENRY GRAY**

**VERSUS**

**STATE OF LOUISIANA**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 23-375
HONORABLE LEO BOOTHE, PRESIDING
\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

**Henry Gray -** *Pro Se*
**Riverbend Detention Center**
**9450 Highway 65 South**
**Lake Providence, LA  71254**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        Henry Gray

**John C. McNeese**
**William F. Bologna**
**Suite 2323**
**1515 Poydras Street**
**New Orleans, LA 70112-3723**
**COUNSEL FOR DEFENDANT-APPELLEE:**
        Catahoula Correctional Center, et al.

**COOKS, Judge.**

On October 21, 2004, Henry Gray, at the time, an inmate in the Catahoula Correctional Center, filed a *pro se* "Petition for Writ of Habeas Corpus" in district court against the "State of Louisiana Catahoula Correction Center Warden Ronnie Books & Capt. Little, Sgt. Atkins, Officer Ben Doe." He later filed a "Motion to Amendment Complaint" in the same court.

The Catahoula Correctional Center and any employees, deemed named, then filed a dilatory exception, alleging the petition was "ambiguous, vague and insufficiently clear to permit defendants to join the issue." Defendants also filed an exception, asserting Plaintiff "failed to provide a short, clear and concise statement of the causes of action allegedly arising out of the material facts" as required by La.Code Civ.P. art 891. Further, Defendants filed an exception of prematurity maintaining that plaintiff failed to exhaust his administrative remedies prior to filing suit. Finally, Defendants filed two motions: The first requesting that Plaintiff's claims be screened by the district court pursuant to La.R.S. 15:1184(B) and that any claims deemed to be frivolous, malicious or which fail to state a cause of action be dismissed; and the second, asking that the court strike from Plaintiff's amended petition "the *ad damnum* as well as the demand for mental pain and suffering and for punitive damages as unavailable under Louisiana law."

The trial court then issued an order directing that Plaintiff Gray be produced for a hearing on March 24, 2005. The hearing was held at which time Plaintiff testified and Defendants' arguments were heard. The trial court granted Defendants' exceptions and motions and struck Plaintiff's pleadings without prejudice, reserving his right to re-file. Plaintiff requested an appeal, which was ordered by the trial court.

# ANALYSIS

## I.  *Exception of Prematurity.*

Defendants argued the district court did not have jurisdiction over Plaintiff's claims because he failed to exhaust the administrative remedies mandated under the Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171-1179 and the Prison Litigation Reform Act (PLRA), La.R.S. 15:1181-1191, prior to filing his petition in the district court.

CARP, enacted in 1985 in response to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j (1980), authorizes the Department of Corrections (DOC) or the sheriff to adopt an administrative remedy procedure for receiving, hearing, and disposing of any and all complaints and grievances by offenders against the state, the department, or its employees that arise while an offender is within the custody or under the supervision of the department.  La.R.S. 15:1171(B). Any complaint or grievance "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison" is subject to the provisions of CARP.  La.R.S. 15:1184 (A)(1)(a). A petitioner is required to "initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained."  La.R.S. 15:1172(B)(1).  The DOC is also authorized to establish deadlines for non-delictual claims and the procedures and processes contained in the administrative remedy procedure. La.R.S. 15:1172(B)(2-3).  If the offender fails to timely initiate or pursue his administrative remedies within the deadlines established, the claim is abandoned and any subsequent suit shall be dismissed with prejudice. La.R.S. 15:1172(C).

Significantly, if a claim falls within the scope of CARP, review of an adverse

administrative decision is "without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level." La.R.S. 15:1177(A)(5). When it was originally enacted, La.R.S. 15:1177 provided that the district court acts as an appellate court and review, even for tort claims, was limited to the manifest error standard. La.R.S. 15:1177.

In *Pope v. State*, 99-2559 (La. 6/29/01), 792 So.2d 713, the supreme court declared the provisions of La.R.S. 15:1171-79 violated Article V, Section 16(A) of the Louisiana Constitution to the extent that they are applied to an offender's tort actions. The *Pope* court reasoned that CARP's unconstitutionality resulted from the manner in which the district court was limited to a deferential judicial review of the administrative decision, rather than a *de novo* review of the tort action. By restricting judicial review, the administrative procedure, in effect, allowed the Department of Public Safety and Corrections to adjudicate its own liability in tort actions, and the district courts were required to give "manifest error" deference to those adjudications. Thus, it served to "divest the district courts of the original jurisdiction fixed by the Constitution in those civil matters, such as tort actions, in which the Constitution does not otherwise provide for original jurisdiction in other tribunals." *Pope*, 729 So.2d at 720.

Subsequent to the *Pope* decision, the legislature amended CARP to specifically exclude tort claims from the limited judicial review procedures. As amended, La.R.S. 15:1177(A) provides:

> A. Any offender who is aggrieved by an adverse decision, **excluding decisions relative to delictual actions for injury or damages**, by the [Department] . . . may, within thirty days after receipt of the decisions, seek judicial review of the decision . . . .

Louisiana Revised Statutes 15:1177(C ), was also amended and provides, in relevant part:

> C. This Section shall not apply to delictual actions for injury or damages, however styled or captioned. *Delictual actions for injury or damages shall be filed separately as original civil actions.*

(Emphasis added.)

However, the *Pope* court acknowledged the legislature "is free to enact procedures for initial submission of tort claims by prison inmates to an administrative agency for review, for example, of frivolous claims, as long as the action of the administrative agency does not constitute the exercise of original jurisdiction." *Id.*, at 720. In response, in 2002, the legislature amended La.R.S. 15:1172 to provide an administrative procedure for review of tort claims, reserving the right of an offender to then file a petition in district court for a *de novo* hearing. Thus, the legislature corrected the constitutional objections to CARP.

Louisiana Revised Statutes 15:1172 provides, in relevant part:

> (B)(1) An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained.
>
> . . . .
>
> (C) If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice.

The provisions of the PLRA were enacted to curtail baseless or nuisance suits by prisoners. *Pope*, 792 So.2d 713. As defined in the act, a "prisoner suit" is "any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison." La.R.S. 15:1181. The provisions of this act

-4-

"shall also apply to all prisoner suits in state court asserting claims arising under 42 U.S.C. § 1983 or other federal laws." La.R.S. 15:1191. Under PLRA, an offender must first exhaust administrative remedies prior to filing in the district court.

Louisiana Revised Statutes 15:1184(A)(2), provides:

> No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice.

Further, a district court, as in CARP, is allowed to screen and dismiss complaints which it deems are frivolous, malicious or fail to state a cause of action. La.R.S. 15:1184(B).

In *Cheron v. LCS Correctional Services, Inc.*, 04-0703 (La.1/19/05), 891 So.2d 1250, the issue arose as to whether Cheron was required to exhaust his administrative remedies prior to asserting his tort claim. Cheron's claim arose after the decision in *Pope*, (which declared CARP unconstitutional as applied to tort claims), but prior to amendments to CARP and PLRA (contained in Act 89) which provided a procedure for the filing and disposing of tort claims. The Department argued, at the time Cheron's claim arose, La.R.S. 15:1184 was in effect and required a prisoner to exhaust *available* administrative remedies prior to filing a separate suit. The supreme court held at the time Cheron's claim arose the Department did not have any available administrative procedures in place for the processing of tort claims and Cheron was not required to utilize an unconstitutional administrative process. The supreme court stated:

> As this court indicated in *Pope*, it is permissible for the legislature to create an administrative remedy with reference to delictual matters. Indeed, the passage of Act 89 provided such a remedy. However, the remedy so established cannot be applied retroactively to deprive a party of a vested right. Further, it is inappropriate to jurisprudentially create a grace period where none is legislatively provided.

-5-

*Id.* at 1260.

Now, "[u]nder the post-*Pope* statutory scheme, all complaints and grievances, including traditional tort claims seeking monetary relief, are subject to administrative procedures." *Wood v. Martin*, 37,856 (La.App. 2 Cir. 12/10/03), 862 So.2d 1057, 1060; La.R.S. 1172(B). However, whether a claim is ultimately subject to a full *de novo* review in the district court under the court's original jurisdiction, is still dependent on the characterization of the claim. The first circuit in *Madison v. Ward*, 00-2842 (La.App. 1 Cir. 7/3/02), 825 So.2d 1245, sitting *en banc*, found claims involving a liberty interest or asserting deprivation of a constitutionally protected right is a traditional civil matter over which the district court retains original jurisdiction. The *Madison* court stated as follows:

> Thus, given *Pope's* ruling that the district court cannot be divested of original jurisdiction to hear tort suits, *Lightfoot [v. Stalder*, 00-1120 (La.App. 1 Cir. 6/22/01), 808 So.2d 710]*'s* implication that claims involving a vested property right or a liberty interest should not be subject to CARP, and the most recent statement of legislative will found in Act 89, we conclude that the district court retains original jurisdiction, and this court has appellate jurisdiction, in tort suits and other "civil matters," including claims involving unconstitutional deprivations of vested property rights, liberty interests, and other properly alleged violations of constitutionally protected rights.

*Id.* at 1254.

Included in this category would be disciplinary actions where the punishment involves the deprivation of property (a vested property right). *Id.* Further, in *Carter v. Cain*, 01-2841, p. 4 (La.App. 1 Cir. 9/27/02), 828 So.2d 1226, 1228, the court noted as to an inmate's "claim of denial of access to the courts, . . . the district court has original jurisdiction over these types of claims, under *Pope v. State*, 99-2559, 792 So.2d at 720 and *Madison v. Ward*, 825 So.2d at 1254." *See also Ngo v. Estes*, 04-186 (La.App. 3 Cir. 9/29/04), 882 So.2d 1262.

In the present case, the State contends Plaintiff failed to exhaust administrative

-6-

remedies prior to filing suit. A party raising an exception of prematurity has the burden of showing that an administrative remedy is available and the petitioner has failed to submit the claim for review prior to filing suit. *Cheron v. LCS Corrs. Servs., Inc.*, 02-1049 (La.App. 1 Cir. 2/23/04), 872 So.2d 1094, *aff'd*, 04-0703 (La.1/19/05), 891 So.2d 1250. In *Ngo v. Estes*, 882 So.2d 1262, 1264, this court discussed the first circuit case of *Daily v. Travis*, 02-2051 (La.App. 1 Cir. 2/23/04), 872 So.2d 1104, *writ granted*, 04-744 (La. 5/14/04), 872 So.2d 527, as follows:

> [T]he first circuit concluded that CARP's former administrative regulations could not be enforced without encountering the problems with judicial review that *Pope* found to be unconstitutional. Accordingly, the first circuit refused to dismiss the inmates' suits in both cases as premature because the Department of Public Safety & Corrections was unable to show that a valid administrative remedy existed. As the first circuit explained in *Cheron*, 872 So.2d at 1103 (citation omitted) (emphasis added):
>
>> The party that raises the objection of prematurity has the burden of showing that *an administrative remedy is available*, by reason of which the judicial action is premature. Once the existence of an administrative remedy is established, *the burden shifts to the plaintiff to show that the specified administrative remedies or procedures have been exhausted or that the present **situation** is one of the **exceptional situations** where the plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate.*

We find, as the first circuit did in *Dailey*, that plaintiff's suit cannot be dismissed as premature because there is no showing that an adequate administrative remedy was available under the exceptional circumstances presented herein.

Plaintiff was arrested on February 7, 2003. He was housed in Madison Parish until September 24, 2004, when he was transferred to Catahoula Correctional Center. According to Plaintiff, upon arrival at Catahoula, all his mail and stamps were confiscated, his law books were taken, other personal property including clothing, a bible and prescription medication were removed from his possession without him

being given a property slip, and he was denied all access to the law library and any assistance from "library workers." He also asserted, after his personal property was taken, he was placed in disciplinary lockdown for three days without a hearing and put into a cell with two other inmates. The cell had only two beds, requiring him to sleep on the floor.

In response to the alleged treatment, Plaintiff attempted to seek redress under CARP. The Department of Public Safety and Corrections installed in all of its institutions, pursuant to CARP, a formal grievance mechanism for use by all inmates committed to the custody of the Department. This process is referred to as the Administrative Remedy Procedure.[1] Inmates are required to file a request to the

_____

[1] Attached to Mr. Gray's brief is a copy of the Administrative Remedy Procedure, which provides as follows:

On September 18, 1985, the Department of Public Safety and Corrections installed in all of its institutions, pursuant to CARP, a formal grievance mechanism for use by all inmates committed to the custody of the Department. The new process bears the name Administrative Remedy Procedure. The procedure has been approved by the U.S. District court for the Middle District of Louisiana and by the Louisiana Legislature (La.R.S. 15:1171 *et. seq.*). Inmates are required to use the procedure before they can proceed with a suit in Federal and State Courts.

Inmates are encouraged to continue to seek solutions to their concerns through informal means, but in order to insure their right to use the formal procedure, they must make their request to the Warden in writing within a 30 day period after an incident has occurred. If, after filing in the formal procedure an inmate receives a satisfactory response through informal means, the inmate may request (in writing) that the Warden cancel his formal request for an administrative remedy.

All inmates may request information about or assistance in using this procedure from their classification officer or from a counsel substitute who services their living area.

The printed forms used in the process contain precise instructions for inmate participants. All instructions should be read and followed carefully.

Original letters of request to the Wardens should be as brief as possible. Inmates should present as many facts as possible to answer all questions (who, what, when, where, how) concerning the incident.

Form ARP-1 is used by inmates to continue to additional Steps in the process. Sufficient space was allowed on the form for inmates to give a reason for requesting review at another level. There is no need to try to rewrite the original letter or request in this limited space. The original letter of request is available to all reviewers at each Step of the process. Inmates must merely give a reason for their dissatisfaction with the previous response.

If an inmate does need additional space for citing reasons for continuing in the process, he may use another page of paper. The inmate must make sufficient copies of this additional page to attach to Form ARP-1 if and when he decides to go to the next Step in the process (he should

warden in writing within a thirty day period after an incident has occurred. Inmates may request information about or assistance in using the Administrative Remedy Procedure from their classification officer or from a counsel substitute who services their living area. On October 1, 2002, the record indicates, Plaintiff signed and submitted an Inmate Request Form which set forth:

> Requesting (ARP) (Administrative Remedy Procedures) Form adopted in compliance with Federal "Civil Rights of Institutionalized Persons Act" (42 U.S.C. 1997c) Title 28. Chapter I, part 40 of the Code of Federal Regulation; And Louisiana Corrections Administrative Procedure Act (La.R.S. 15:1171, et seq.). That on the 24 day of September, Captain Little confiscated (3) Law Books, from me the Requestor. (1) Lawyer Federal Appeal, (2) & (3) Louisiana Code of Criminal Procedures, 1 & 2, For Court Filing reasons. They where hard backs. I'll adgree [sic], to taking the backs of books. (Cases pending in two courts) District & Appeal court. Need and must have the Books!!!

The form was approved by the assistant warden on October 4, 2004. On October 5, 2004, Plaintiff filed an "ARP. X. Lost Property Claim. La.R.S. 15:866.2, and Racial Discrimination, and Harassment by and through Catahoula Administration." He received no response to this filing, and believing he "[w]asn't going to get legal assistant, or his law books back. And needed to file motions, in court. Plaintiff had no . . . alternative, but to file in [district] court, for reasons stated and deadlines in other courts."[2] Thus, on October 21, 2004, Mr. Gray filed his "Petition for Writ of Habeas Corpus" in district court. He alleged his treatment by Catahoula personnel

---

send the original to the Warden, make a copy for his file, and a copy to be attached to Form ARP-1 should he decide to go to the Third Step).

Once an inmate is accepted into the procedure, he must use the manila envelope that is furnished to him with his First Step response to continue in the procedure. The requested information on the envelope should be filled in before forms are inserted since the forms are self-carboning.

The flaps on the envelope may be tucked into the envelope for mailing, or the inmate may choose to tape or staple the envelope closed.

[2] Mr. Gray listed a district court suit he filed, docket number 100311, Civil Docket A; another suit filed in district court which had not yet at the time of filing been assigned a docket number; and a case in the Louisiana First Circuit Court of Appeal, docket number 2004-KW-1869. Mr. Gray noted he was unable to pursue these cases due to the holding of his mail by Catahoula personnel.

amounted to harassment, discrimination and the violation of his constitutional rights. His petition also detailed his numerous attempts to comply with the Administrative Remedy Procedure

Two days after filing his "Petition for Writ of Habeas Corpus," Plaintiff was transferred to Claiborne Parish Detention Center. He then mailed a "Second Step Form ARP-3" to Richard Stalder, the Secretary of the Department of Public Safety and Corrections, concerning his treatment at Catahoula. Stalder then mailed the Second Step form to the Assistant Warden at Claiborne, John Goodwin. According to Plaintiff, he was called to the assistant warden's office. Plaintiff states Goodwin refused to comply with Stalder's orders and would not help Plaintiff complete the necessary steps to pursue his claim. The day after Plaintiff's hearing on his "Petition for Writ of Habeas Corpus" in district court, Plaintiff was transferred to the Richland Detention Center in Richland Parish. According to Plaintiff, after filing two more ARP claims while at Richland, he was moved to Riverbend Detention Center in East Carroll Parish, where he remained incarcerated at the time of this appeal.

Mr. Gray contends he has been frustrated in his attempts to pursue his administrative remedies by continual transfers to different correctional centers. Additionally, he has been denied access to the prison library, his law books and mail has been taken from him, thus, denying him the ability to effectively pursue cases he has pending at the trial and appellate levels. Although the Administrative Remedy Procedure specifically provides that "[a]ll inmates may request information about or assistance in using this procedure from their classification officer or from a counsel substitute who services their living area," Plaintiff maintains he has been provided no assistance from anyone in his attempts to pursue his administrative remedies.

A review of Plaintiff's pleadings indicate he has never had the opportunity to

adjudicate the merits of his claim for return of his personal effects, including his law books. Prison officials did not follow through with a review of several of his complaints within the system, deciding instead to transfer him to different facilities. Moreover, the trial court dismissed his complaint for failure to pursue administrative remedies without reaching the question of whether prison officials prevented him from pursuing those remedies. Mr. Gray's complaints have been consistent, as is evident from his dialogue with the trial court:

THE COURT: All right. Mr. Gray, what's your position?

MR. GRAY: After they took my law books I was complaining about, they locked me down – when I moved to Catahoula, I was locked down, first of all, the first day I went there I was locked down. They took my law books. I wasn't able to go to the law library. I had other cases pending in the First Circuit Court of Appeal and district court and from that time to now, I'm still hung up on two cases. I had one in the Supreme court I had, and got help on that one that I had filed, but I had a deadline when I was at Catahoula and I wasn't able to make some of the deadlines on the cases I had in court because I wasn't able to go to the law library.
They took some of the law books I had came from Madison Parish and some I had when I got to Madison Parish, they came from Baton Rouge.

. . . .

THE COURT: All right. It doesn't say anything about administrative remedies in here. I just read your amended complaint.

MR. GRAY: It's an exhibit on there, in the complaint, the administrative remedy, the form I had to fill out and the process you had to go through at Catahoula, you have to fill out a request form to get administrative remedy form. By the time I had done that three or four times, filling out a request form, I was transferred from the facility to stop the litigation.

. . . .

THE COURT: Well, what do you want out of the Catahoula – you

-11-

were here for 15 days, you want money or something.

MR. GRAY: They took my clothes and my property, my boots, all the stuff that Madison Parish had passes us out. What I was saying the indigent supply that the prison gave us when I came here, they took all that. They took my stamps, my soap, I was fouled up. I couldn't write, I couldn't get my papers to work in Court and just whatever.

THE COURT: Sounds to me like that's a civil suit. I'm going to strike everything you've filed. And you can start over and do it right this time.

MR. GRAY: If I can get to the proper books and get to the law library, I can do it. I lost all of my property while I was there.

. . . .

THE COURT: Mr. Gray, I recommend you start over if you intend – I don't recommend anything, but if you want to file action in this Court, do it right.

MR. GRAY: Like I say, they took my civil law books and everything.

The trial court never reached the merits of Mr. Gray's complaint, instead opting to dismiss his petition. The State now contends Mr. Gray must pursue his grievance through administrative channels prior to obtaining judicial review of his claim. We find the State has failed to prove Mr. Gray had a viable way to file for administrative relief. In fact, the crux of Mr. Gray's complaint is that time and time again, he has filed administrative complaints, but has been unable to see them to a resolution due to the actions of prison officials. The State cannot, now, assert Mr. Gray did not do that which it prevented him from doing. Neither can the State circumvent the court's authority to review such a complaint by claiming the court has no jurisdiction to hear the claim. Accordingly, we reverse the decision of the trial court granting the State's exception of prematurity.

**II.** *Exceptions of Vagueness and Ambiguity of the Petition and Failure to Conform to the Requirements of La.Code Civ.P. art. 891.*

At all times below and before this court, Plaintiff has acted as his own counsel. We acknowledge that Plaintiff's petition, as well as his brief to this court, are difficult to understand. However, the jurisprudence has consistently held *pro se* plaintiffs should be allowed more latitude than plaintiffs represented by counsel because they lack formal training in the law and its rules of procedure. *Bankston v. Alexandria Neurosurgical Clinic*, 94-693 (La.App. 3 Cir. 12/7/94), 659 So.2d 507. "A layman who represents himself cannot be held to the same standards of skill and judgment which must be attributed to an attorney, *Connolly v. Connolly*, 316 So.2d 167, 168 (La.App. 4th Cir.1975), although he assumes responsibility for his own inadequacy and lack of knowledge of both procedural and substantive law. *Rochon v. Consolidated Constr. Co.*, 452 So.2d 404 (La.App. 3d Cir.1984)." *Rader v. Dep't of Health and Hosps., Office of Public Health, Eng'g Servs.*, 94-0763, p. 3 (La.App. 1 Cir. 3/3/95), 652 So.2d 644, 646.

Compounding the difficulties presented by Plaintiff's layman status was the detention center's alleged refusal to allow him to use the inmate law library and the taking of his personal property, in particular his law books. We also surmise from his submission before this Court that Plaintiff is complaining he was never provided with the proper forms or assistance to initiate any administrative remedies for multiple alleged infractions of his rights and he does not possess the independent "know-how" to protect his rights without access to the prison library or assistance of appointed counsel.

In *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct 1491, 1498 (1977), the United States Supreme Court held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court further elaborated in *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996) that while "*Bounds* did not create an abstract, freestanding right to a law library," it did require "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." To establish a *Bounds* violation the inmate must suffer "actual injury" or "actual harm" resulting from the alleged shortcomings in the library or legal assistance program." *Id.* A review of Plaintiff's pleadings show he has sufficiently alleged "actual injury" or "actual harm" from his denial of access to the law library.

We have reviewed the pleadings and find we are able to derive the causes of action asserted by Plaintiff. While Plaintiff may have failed to set forth "a short, clear and concise statement of the causes of action allegedly arising out of the material facts" as Defendants allege, we do not agree with them that "the facts alleged are ambiguous, vague and insufficiently clear to permit defendants to join the issue." The exception of vagueness or ambiguity of the petition does not entitle defendants to demand exactitude and detail of pleadings beyond those necessary to place them on notice of the causes of action alleged. *Snoddy v. City of Marksville*, 97-327 (La.App. 3 Cir. 10/8/97), 702 So.2d 890. It is sufficient if Plaintiff's petition fairly informs Defendants of the nature of the cause of action and includes sufficient substantive particulars to enable them to prepare their defense. *Id.* We find Plaintiff's petition, while not reflecting the same standards of skill and judgment which would be expected of an attorney, were sufficient to alert Defendants of the causes of action alleged. Therefore, the trial court's grants of the exceptions of vagueness and ambiguity of the petition and failure to conform to the requirements of La.Code

Civ.P. art. 891 are reversed.

### III. *Motion to Screen.*

Defendants filed a Motion to Screen requesting that Plaintiff's claims be screened by the trial court pursuant to La.R.S. 15:1184(B) and any claims deemed frivolous, malicious or which fail to state a cause of action be dismissed. La.R.S. 15:1184(B) provides in pertinent part:

> The court, on its own motion or on the motion of a party, shall dismiss any prisoner suit if the court is satisfied that the action is frivolous, is malicious, fails to state a cause of action, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief can be granted.

We can safely say Plaintiff's allegations, e.g., the taking of his personal property and denial of access to the courts, are not frivolous, do not fail to state a cause of action or meet any other of the criteria for dismissal set forth in R.S. 15:1184(B). Therefore, the trial court erred in dismissing Plaintiff's petition pursuant to La.R.S. 15:1184(B).

### IV. *Motion to Strike.*

Plaintiff in his "Motion to Amendment Complaint" sought "$1,000 a day for his mental pain and physical pain and suffering," as well as punitive damages of $2,000.00 and compensatory damages of $5,000.00. Defendants filed a Motion to Strike under La.Code Civ.P. art. 964, asking the district court to strike from the petition the demand for specific monetary amounts contending this portion of Plaintiff's prayer violates the restrictions found in La.Code Civ.P. art. 893. Defendants also moved to strike Plaintiff's demand asserting mental anguish damages are not recoverable absent proof of physical injury as provided in La.R.S. 15:1184(E) and punitive damages are unavailable under Louisiana law. La.Code Civ.P. art. 893(A) provides that no specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand and that the prayer should be "for such damages as are reasonable." Accordingly, we

grant the motion to strike only to the extent necessary to delete references to specific monetary amounts, with the reservation that Plaintiff's prayer shall be read to include a demand "for such damages as are reasonable." Further, because the record indicates the trial court did not reach the issue relating to Plaintiff's right to pursue mental anguish damages and punitive damages as a result of the alleged conduct, we remand the issue for further hearing and ruling.

## DECREE

For the foregoing reasons, the judgment of the lower court granting Defendants' Exceptions of Prematurity as it applied to Plaintiff's claims of deprivation of constitutional rights is reversed. We also reverse the trial court's grant of the exceptions of Vagueness and Ambiguity of the Petition, Failure to Conform to the Requirements of La.Code Civ.P. art. 891, and dismissal based on La.R.S. 15:1184B. We reverse that portion of the judgment granting the Motion to Strike, except to strike any references to specific monetary amounts in the petition, with the reservation that Plaintiff's prayer shall be read to include a demand "for such damages as are reasonable." Further, we remand for a hearing and ruling on the issue of Plaintiff's right to pursue mental anguish damages and punitive damages as a result of the alleged conduct. In addition, we hereby order that Plaintiff be afforded access to the inmate law library where he is currently incarcerated and/or be provided legal assistance. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against Defendants-Appellees.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**